IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Appeal Number 24-10058-D

PATRICK REED,

*Appellant*

v.

BRANDEL CHAMBLEE, *et al*.

*Appellees*.

On Appeal from the United States District Court
for the Middle District of Florida, Jacksonville Division,
3:22-cv-01059-TJC-PDB

**BRIEF OF APPELLANT PATRICK N. REED**

Anthony C. Lake
State Bar of Georgia No. 431149
GILLEN & LAKE LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Melissa Isaak
Alabama State Bar No. 4872 A 59I
ISAAK LAW FIRM
2815-B Zelda Road
Montgomery, Alabama 36106
Telephone: (334) 770-4636
Email: melissa@protectingmen.com

*Counsel for Appellant Patrick N. Reed*

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

PATRICK REED,

    Appellant

v.

BRANDEL CHAMBLEE, *et al*.

    Appellees.

Appeal Number 24-10058-D

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Patrick Reed, Appellant, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

Bacon, Benjamin S., Appellee

Brown, Jay W., counsel for Appellee Conde Nast International, Inc.

Chamblee, Brandel E., Appellee

Conde Nast International, Inc., Appellee

Corrigan, Timothy J., United States District Judge

Fugate, Rachel E., counsel for Appellees

Gannett Co., Inc., Appellee

Gannett Satellite Information Network, Appellee

Golfweek, Appellee

Hack, Damon, Appellee

Klayman, Larry E., counsel for Appellant

Lake, Anthony C., counsel for Appellant

LoCicero, Carol J., counsel for Appellees

Lynch, Eamon, Appellee

Minchin, Minch B., counsel for Appellees

Norbut, Linda R., counsel for Appellees

Parsons, Emily, counsel for Appellee Conde Nast International, Inc.

Shullman, Deanna K., counsel for Appellees

Tobin, Charles D., counsel for Appellee Conde Nast International, Inc.

TGC, LLC, Appellee

Respectfully submitted, this 5th day of March, 2024.

/s/ Anthony C. Lake_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Melissa Isaak
Alabama State Bar No. 4872 A 59I
Isaak Law Firm
2815-B Zelda Road
Montgomery, Alabama 36106
Telephone: (334) 770-4636
Email: melissa@protectingmen.com

*Counsel for Appellant Patrick N. Reed*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant desires oral argument. Appellant believes that oral argument will assist the Court in its consideration of the issues raised in this appeal, especially complicated issues relating to defamation.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ………… C-1

Statement Regarding Oral Argument …………………………………………… i

Table of Contents ………………………………………………………………… ii

Table of Citations …………………………………………………………….... v

Statement of Jurisdiction ………………………………………….....………....… xii

Statement of the Issues ……………………………………………………….… 1

Statement of the Case …………………………………………………….….. 2

    I. Statement of Facts ……………………………………………….......... 2

        A. Professional Golfer Patrick Reed ………………………………… 2

        B. Mr. Reed's Allegations in the Action Below …………………….. 3

            1. Damon Hack's and Shane Bacon's Statements
            Concerning Alleged Cheating By Mr. Reed ……………….. 3

            2. Brandel Chamblee's Statements Concerning
            Mr. Reed and Other Players with The LIV Tour …………... 4

            3. Eamon Lynch's Statements Concerning Mr. Reed
            and Other Players on the LIV Tour ………………………… 9

            4. Additional Allegations By Mr. Reed in His Complaint …… 9

    II. Course of Proceedings …………………………………………..…… 11

    III. Standards of Review ………………………………………………....... 15

Summary of the Argument ……………………………………………...…….. 16

Argument …………………………………………………………………... 18

    I. The District Court Erred in Dismissing Mr. Reed's Claims

    With Prejudice in Response to Defendants' Motions

    to Dismiss ……………………………………………………………… 18

        A. The District Court's Dismissal of Mr. Reed's

        Claims Without an Opportunity to Amend His

        Amended Complaint Constituted Error ………………………… 19

        B. The District Court Erred in Finding That Certain

        Statements By Defendants Allegedly Constituted

        Pure Opinion …………………………………………………… 21

        C. The District Court Erred in Finding That Certain

        Statements By Defendants Allegedly Constituted

        "Rhetorical Hyperbole" ……..………………………………… 28

        D. The District Court Erred in Finding That Mr. Reed

        Failed to Sufficiently Plead Actual Malice ……………………… 30

        E. Mr. Reed Sufficiently Alleged Group Libel

        and Defamation By Implication ………………………………… 34

F. The District Court's Dismissal of Mr. Reed's

    Claims for Tortious Interference Constituted

    Error ……………………………………………..……… 37

G. The District Court's Dismissal of Mr. Reed's

    Claims Constituted Error ……………………..……………… 40

Conclusion ……………………………………………………...….. 43

Certificate of Compliance …………………………………………... 45

Certificate of Service …………………………………...……... 46

**TABLE OF CITATIONS**

**Cases**

*Abraham v. Baldwin*, 42 So. 591 (Fla. 1906) …………………………..………… 27

*Adams v. News–Journal Corp.*, 84 So.2d 549 (Fla. 1955) ……………………….. 26

*Anson v. Paxson Communications Corp.*,

    736 So.2d 1209 (Fla. 4th Dist. Ct. App. 1999) ……………………………. 22

*Anyanwu v. Columbia Broadcasting System, Inc.*,

    887 F. Supp. 690 (S.D.N.Y. 1995) …………………………………………… 34

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………… 40, 41, 42

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………… 40, 41, 42

*Blake v. Giustibelli*, 182 So. 3d 881 (Fla. 4th Dist. Ct. App. 2016) ………..…….. 33

*Brown v. Tallahassee Democrat, Inc.*,

    440 So. 2d 588 (Fla. 1st Dist. Ct. App. 1983) ……………………….....… 14

*Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*,

    831 So. 2d 204 (Fla. 4th Dist. Ct. App. 2002) …………………………….. 38

*Caster v. Hennessey*, 781 F.2d 1569 (11th Cir. 1986) …………………………….. 39

*Caswell v. Manhattan Fire & Marine Ins. Co.*,

    399 F.2d 417 (5th Cir. 1968) ………………………………………………… 27

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*,

    48 F.4th 1222 (11th Cir. 2022) …………………………………………….. 15

*Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021) …………. 25Miche

*Dershowitz v. Cable News Network, Inc.*,

    541 F. Supp. 3d 1354 (S.D. Fla. 2021) …………………………..……... 31, 33

*Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) ……………………. 38

*Don King Prods., Inc. v. Walt Disney Co.*,

    40 So. 3d 40 (Fla. 4th Dist. Ct. App. 2010) ……………………………….. 30

*Fawcett Publications, Inc. v. Morris*, 377 P.2d 42 (Okla. 1962) …………..…….. 37

*Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582 (11th Cir. 1986) ………….…... 42

*Fornshill v. Ruddy*, 891 F. Supp. 1062 (D. Md. 1995) …………….…………….. 34

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006) …………………… 21

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) ……………………………….. 38

*From v. Tallahassee Democrat, Inc.*,

    400 So. 2d 52 (Fla. 1st Dist. Ct. App. 1981) …………………….……... 21, 22

*Gangelhoff v. Lokey Motors Company*,

    270 So.2d 58 (Fla. 2d Dist. Ct. App. 1972) ……………………………….. 31

*Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202 (11th Cir. 2022) …..………. 38

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ………………..…… 38

*Harwood v. Bush*, 223 So. 2d 359 (Fla. 4th Dist. Ct. App. 1969) ………………. 35

*Hay v. Independent Newspapers, Inc.*,

    450 So.2d 293 (Fla. 2d Dist. Ct. App. 1984) ……………………………… 21

*Herbert v. Lando*, 441 U.S. 153 (1979) …………………………………………… 30, 32

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*,

    641 F.3d 1259 (11th Cir. 2011) ……………………………………………… 15

*Hood v. Connors*, 419 So. 2d 742 (Fla. 5th Dist. Ct. App. 1982) ………………… 31

*Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002) ………………………………… 28

*Hustler Magazine v. Falwell,* 485 U.S. 46 (1987) ………………………………….. 28

*Jankovic v. Int'l Crisis Group*, 494 F.3d 1080 (D.C. Cir. 2007) ………………… 24

*Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22 (D.C. Cir. 2010) ……………...………. 24

*Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098 (Fla. 2008) …………...…………... 36

*Keller v. Mia. Herald Publ'g Co.*, 778 F.2d 711 (11th Cir. 1985) ……...…….... 21, 28

*Kist v. Hubbard*, 93 So. 3d 1100 (Fla. 5th Dist. Ct. App. 2012) ……….………… 31

*Layne v. Tribune Co.*, 108 Fla. 177 (1933) ………………………………………… 33

*Lewis State Bank v. Travelers Ins. Co.,*

    356 So.2d 1344 (Fla. 1st Dist. Ct. App. 1978) ……………………………….. 39

*LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.*,

    842 So. 2d 881 (Fla. 4th Dist. Ct. App. 2003) …………………….…... 22, 26

*Lundquist v. Alewine*, 397 So.2d 1148 (Fla. 5th Dist. Ct. App. 1981) ……………. 31

*Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*,

    992 F.2d 1171 (11th Cir. 1993) ……………………………………….…….… 42

*Matthews v. Deland State Bank*,

    334 So.2d 164 (Fla. 1st Dist. Ct. App. 1976) ……………………………… 31

*Medure v. Vindicator Printing Co.*,

    273 F. Supp. 2d 588 (W.D. Pa. 2002) …………………………………..… 34

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) …………… 18, 30, 40

*Mid–Fla. Television Corp. v. Boyles*, 467 So.2d 282 (Fla. 1985) ………………… 33

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ………………………… 22, 28

*Neitzke v. Williams*, 490 U.S. 319 (1989) …………………………………… 41

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ………………..……… 30, 31

*Ounjian v. Globoforce, Inc.*, 89 F.4th 852 (11th Cir. 2023) ………………………… 15

*Ozyesilpinar v. Reach PLC*,

    365 So. 3d 453 (Fla. 3d Dist. Ct. App. 2023) ………..…………….. 22, 25, 38

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,

    781 F.3d 1245 (11th Cir. 2015) ……………………………………..…….. 38

*Papasan v. Allain*, 478 U.S. 265 (1986) …………………………………….. 42

*Patel v. Specialized Loan Servicing, LLC*,

    904 F.3d 1314 (11th Cir. 2018) ……………………………………..…….. 42

*Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) ………………………… 15

*Popular Bank of Fla. v. R.C. Asesores Financieros, C.A.*,

    797 So. 2d 614 (Fla. 3d Dist. Ct. App. 2001) ………………………….... 39

*Presley v. Graham*, 936 F. Supp. 2d 1316 (M.D. Ala. 2013) ……………….…….. 29

*Readon v. WPLG, LLC*,

>    317 So. 3d 1229 (Fla. 3d Dist. Ct. App. 2021) …………………………… 30

*Rubin v. U.S. News & World Rep., Inc.*,

>    271 F.3d 1305 (11th Cir. 2001) …………………………………………… 26

*Sanderson v. Caldwell*, 45 N.Y. 398 (1871) ……………………………………… 28

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ……………………………………….... 41

*Shaw v. R.J. Reynolds Tobacco Co.*,

>    818 F. Supp. 1539 (M.D. Fla. 1993) ………………………………...……….. 26

*Skinner v. Switzer*, 562 U.S. 521 (2011) …………………………………………. 41

*Skupin v. Hemisphere Media Grp., Inc.*,

>    314 So. 3d 353 (Fla. 3d Dist. Ct. App. 2020) …………………….…… 14, 21

*State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) ……………… 42

*Stembridge v. Mintz*, 652 So. 2d 444 (Fla. 3d Dist. Ct. App. 1995) …………....… 22

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ……………………………… 41

*Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126 (Fla.1985) ………………… 39

*The Gazette, Inc. v. Harris*, 229 Va. 1 (1985) ……………………………………… 35

*Thomas v. Jacksonville Television, Inc.*,

>    699 So. 2d 800 (Fla. 1st Dist. Ct. App. 1997) ………………..……… 14, 34, 35

*Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir. 1988) ………………………..… 20

*Town of Sewall's Point v. Rhodes*,

  852 So. 2d 949 (Fla. 4th Dist. Ct. App. 2003) …………………………….. 22

*Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265 (11th Cir. 2002) ………..…….. 18

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) ……………… 14, 21, 25, 30, 36, 40

*Warner v. Missouri Pac. Ry. Co.*, 112 F. 114 (C.C.W.D. Tenn. 1901) ………….. 37

*Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289 (11th Cir. 2018) …………. 20

*Zambrano v. Devanesan*, 484 So.2d 603 (Fla. 4th Dist. Ct. App. 1986) ...…… 22, 25

*Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197 (M.D. Fla. 2021) ……………….. 34

## Federal Rules

Fed. R. Civ. P. 8 ……………………………………………...……….. 39, 40, 41, 42

Fed. R. Civ. P. 10 ……………………………………………………….………… 19

Fed. R. Civ. P. 15 ………………………………………………………………… 20

## Other Authorities

33 Am. Jur., Libel and Slander (1941) …………………………………….. 35

50 Am. Jur.2d, Libel and Slander (1970) …………………………...……….. 30

91 A.L.R. ………………………………………………………………………… 35

C. Wright & A. Miller, *Federal Practice & Procedure* (3d ed. 2004) ……...…… 41

W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts*

  (5th ed. Supp. 1988) ……………………………………………...……….. 36

*Restatement of Torts (Second)* (1977) …………………………...…….. 14, 34, 35

*Sack on Defamation* (3d ed. 1999) ……………………………………….……. 34

## STATEMENT OF JURISDICTION

This Court possesses appellate jurisdiction under 28 U.S.C. § 1291 because this appeal is from a final decision of a district court. The District Court issued an Order on September 27, 2023, which conclusively resolved the claims of the parties and ended the litigation on the merits. Dkt.#91. On January 8, 2024, Appellant timely filed his Notice of Appeal. Dkt.#103.

## STATEMENT OF THE ISSUES

I.     Whether the District Court erred in dismissing Mr. Reed's claims with prejudice on the defendants' motions to dismiss.

<u>**STATEMENT OF THE CASE**</u>

## I. <u>Statement of Facts</u>

### A. <u>Professional Golfer Patrick Reed</u>

Patrick Reed is the 2018 Masters Tournament Champion, a nine-time PGA Tour Champion golfer and an eight-time United States Team member. Dkt.#1 at 4. Mr. Reed won his first PGA Tournament in 2013 in his first year with the Tour at the age of 23, at The Wyndham Championship. *Id*. In 2014, he became the youngest player to ever win The World Golf Championship in the Trump International "Blue Monster." *Id*. at 5.

Since 2015, Mr. Reed has also been a member of the European Tour and has made it to both the PGA and European Tour finale, The Tour Championship and The Race to Dubai, eight times, and is an Honorary Lifetime Member of the DP World Tour. Dkt.#1 at 4. Mr. Reed made the PGA Tour Championship each year from 2014 through 2021, was a voting member of the PGA, and holds three Tour records. *Id*. at 5. He is the only two-time American Olympian golfer for the United States. *Id*.

Mr. Reed furthermore started the Team Reed Foundation, serving numerous national and local charities and foundations, hosts The Patrick Reed American Junior Golf Association's Tournament each year in The Woodlands, Texas, and supports the American Junior Golf Association which assists African-American and other minority golfers. Dkt.#1 at 4-5. Mr. Reed and his spouse furthermore own

2

grindworksUSA, the domestic distributor for grindworks, a Japanese gold equipment company. *Id*. at 7.

**B. <u>Mr. Reed's Allegations in the Action Below</u>**

LIV is a professional golf tour company headed by golfer Greg Norman and financially backed by the Public Investment Fund of Saudi Arabia. Dkt.#1 at 12. Mr. Reed ceased to be a member of the PGA in June of 2022. *Id*. at 6. Mr. Reed subsequently signed as a player with LIV Golf. *Id*.

On September 28, 2022, Mr. Reed filed an action against Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, Golfweek and Gannett Co., Inc., in the United States District Court of the Middle District of Florida. Dkt.#1 at 1. Mr. Reed alleged claims against the defendants for defamation, defamation *per se*, defamation by implication, injurious falsehoods, civil conspiracy, and tortious interference, *Id*. at 34-95.

**1. <u>Damon Hack's and Shane Bacon's Statements Concerning Alleged Cheating By Mr. Reed</u>**

Mr. Reed alleged in his initial Complaint that, on or about January 31, 2021, broadcasters Damon Hack and Shane Bacon appeared on Golf Channel, where Hack stated:

> "I'm just not comfortable with Patrick's behavior around the ball. You know, I always thought that the golf ball -- you treat it like the Hope Diamond. You treat it like a Fabergé egg, especially when it comes to an unclear situation. So right here we're seeing Patrick kind of hovering over where he says the ball was embedded and it's just hard to know

what he's doing. Like where is the official at this point? You know, we're supposed to take him at his word, but there's -- there just seems to be smoke."

Dkt.#1 at 22. Bacon subsequently said "To me, this looks bad for Patrick Reed, a guy that has history of doing these things." *Id*. at 23. Hack then stated:

> "So now we have to lean on the fact that Patrick Reed does have a history. I go back to 2019 in the Bahamas, the Par 5, 11th hole where he, you know, has the brushing away of the sand; and then later says, 'Well, it's my word against their word.' And he says that 'When I get in the sand' -- he says, 'I'm afraid of getting close to the cup hole.' That's his direct quote. 'I'm afraid.' 'Every time I get in the bunker, I'm scared to even get my club close to it.' He's close to it, Shane Bacon. He's not just close to it. He's sweeping it away. When you tell me that high-level players can tell me the difference between two clubs that weigh a .01 ounce difference. He's not feeling that? So we already have this situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation."

*Id*. As alleged by Mr. Reed, there was never any finding that Mr. Reed had purportedly cheated or engaged in any misconduct. *Id*.

### 2. **Brandel Chamblee's Statements Concerning Mr. Reed and Other Players with The LIV Tour**

Mr. Reed alleged in his initial Complaint that, on or about February 1, 2021, Brandel Chamblee, a former professional golfer, appeared on the Golf Channel and stated "I either messaged or talked to 15 to 20 current and past tour players, some of them Hall of Fame members, over the past 24 hours and not a single player is in defense of what Patrick Reed did." Dkt.#1 at 21. Chamblee stated that Mr. Reed "violated that code in so many ways that even the rules officials themselves were

sort of stammering as to how to address it." *Id*. He proceeded to say that "In the same way that there is a distinction between law and morality, there is a mark distinction, in this case, between what he was legally allowed to do and what he ethically appeared to be doing." *Id*. Chamblee also made the following statements during the broadcast:

> "Ask yourself this: if everybody in the field were to conduct themselves around a golf ball in this manner, would it be good for the game of golf? It would not be. It would call into question every single movement or drop that every single player would be making. It would cause an uproar on the PGA Tour."

*Id*.

The Complaint furthermore alleged that, on or about February 5, 2022, Chamblee published an article on Golf Channel with the title titled "Mickelson's statements inaccurate and ironic: Obnoxious greed? Et tu, Phil?," in which Chamblee stated "[n]ow he has continued his subterfuge by saying the PGA Tour could end any threat, presumably from the Saudi blood money funding a proposed Super Golf League, by just handing back the media rights to the players." Dkt.#1 at 18. Chamblee stated that Mr. Reed's money was "coming from the wrong place," and that it was "good versus evil… evil usually fails. So, it will fail." *Id*.

Mr. Reed alleged that, on or about June 10, 2022, on a television broadcast on Sky Sports News, Chamblee stated "[t]his is one of the saddest days in the history of golf. Watching these players come together for money and show to the

world…they are showing us that they are the greediest, most self-serving, self-interesting, willfully blind players in the world of golf today." Dkt.#1 at 19. Chamblee also said "[s]o when I hear these players say that they are 'growing the game'… it makes me want to puke. They're destroying the game. And they are destroying their reputations." *Id.* at 20.

Mr. Reed continued on to allege that, on June 14, 2022, Chamblee stated on a podcast concerning LIV players:

> "So if they're aligning themselves with a tyrannical, murderous leader… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws."

Dkt.#1 at 16. During the same podcast, Chamblee said:

> "I think there's a reason for that…they're destroying the professional game they were they been put in the Hall of Fame because of their accomplishments and because of their legacy well they've tainted their legacy in an irreparable way so I think both of them should be kicked out of the Hall of Fame I really do…"

*Id.* at 17. Chamblee furthermore said that Mr. Reed was "over there purely playing for blood money." *Id.*

Mr. Reed alleged that, on or about September 20, 2022, Chamblee again appeared on the Golf Channel where he said "They would not like to see a tour

funded by a government with such a discriminatory practice by that government. This would be at least in my view akin to allowing – at the time it was called the South African tour under apartheid – tournaments played there to accumulate world ranking points." Dkt.#1 at 27-28. Chamblee repeatedly stated during the broadcast that Mr. Reed and the other LIV players had been "bought." *Id*. at 28.

In addition, Mr. Reed alleged that Chamblee made the following posts on the social media website Twitter (now X):

1.      on or about June 26, 2022: "[E]ither way, whether the money is against or in addition to guarantees its still blood money and you're still complicit in sportswashing," Dkt.#1 at 24;

2.      on or about August 10, 2022: "Golf won today. Murderers lost," *id*.;

3.      on or about August 28, 2022: "No. Wrong. But when they murdered, butchered and dismembered a dissenting journalists [sic] they began to care. Those same people behind that murder run this tour," *id*. at 25;

4.      on or about August 28, 2022: "The IOC decides where the Olympics go…and there is a big difference between doing business in a country and directly for a murderous regime as LIV golfers are," *id*.;

5.      on or about August 28, 2022: "The criticism of LIV defectors is not that they are doing it for the money, that is easily understood, what is not so easily

understood is why they would directly work for a regime that has such a reprehensible record on human rights," *id*. at 26;

6.    on or about August 30, 2022: "I can understand [Mohammed bin Salman Al Saud's] regime wanting to become more than a petro[l] country & corporate interest to serve that part of the world. I can't understand an individual working for him," *id*. at 25;

7.    on or about September 2, 2022: "These thugs are directed by the people who fund LIV golf…but LIV will pretend this video and so many others depicting human rights atrocities don't exist, but will happily post video of a golf event in Boston meant to sportswash these atrocities," *id*. at 24;

8.    on or about September 2, 2022: "LIV golf is about hiding [the Saudi Arabian regime's] human atrocities," *id*. at 25;

9.    on or about September 13, 2022: ""By defectors I mean those who have turned their backs on the meritocracy of professional golf. I mean those who have sold their independence to a murderous dictator and those who have sued their fellow professionals so they can benefit from the tours they are trying to ruin," *id*. at 24-25; and

10.    on or about September 15, 2022: "The sportswashing paid to turn a blind eye to atrocities, the blight of LIV," *id*. at 26.

11.

**3.** **<u>Eamon Lynch's Statements Concerning Mr. Reed and Other Players on the LIV Tour</u>**

Mr. Reed alleged in his Complaint that, on or about August 24, 2022, golf writer and commentator Eamon Lynch published an article on the Golfweek website with the title "Lynch: PGA Tour's war with LIV Golf enters 'Return of the Jedi' phase." Dkt.#1 at 26, 27. In the article, Lynch described Mr. Reed and the other LIV players as the "evil empire's…Death Star," *id*. at 27, and stated that the players were allegedly "opt[ing] to cut and run for Saudi money," *id*.: and had endured "reputational harm that comes with taking guaranteed cash to sportswash Saudi atrocities," *id*

**4.** **<u>Additional Allegations By Mr. Reed in His Complaint</u>**

In his claims for defamation against the defendants, Mr. Reed alleged that the defendants acted knowingly and recklessly in publishing statements which defendants knew, or should have known, to be false and misleading. Dkt.#1 at 34, 37, 40, 44, 46, 49, 53, 54, 56, 58-59, 60, 62, 64, 65, 67, 69, 70, 71-72, 74-76. The Complaint charged that the defendants' statements were false, defamatory and malicious, and that the statements had caused injury and harm to Mr. Reed in his profession and business. *Id*. at 36, 39-40, 42, 46, 49, 51, 54, 56, 57, 59-60, 61, 63, 65-72, 74, 76, 77. Concerning Mr. Reed's claims for libel *per se* against the defendants, it stated that the defendants' statements had caused Mr. Reed ridicule, hatred, disgust, contempt and irreparable harm to Mr. Reed in his trade and

profession as a professional golfer, to his reputation and personally. *Id*. at 42, 51, 57, 63, 67, 72, 77. Conversely, in regard to the claims for defamation by implication, the Complaint alleged that the defendants' statements had created a false impression of Mr. Reed and a defamatory connection between facts or a defamatory implication by omitting facts. *Id*. at 39, 48, 55, 61, 66, 71, 75. In his claims for injurious falsehoods against the defendants, Mr. Reed alleged that the defendants published falsehoods concerning Mr. Reed, that the defendants knew the falsehoods were likely to cause Mr. Reed pecuniary harm in the form of his sponsors dropping him and decreasing the amount of sponsorship opportunities, and that the falsehoods played a part in Mr. Reed losing sponsorships, receiving fewer new sponsorship opportunities, and decreasing sales and causing other damage to his companies grindworksUSA, and his charitable corporation Team Reed. *Id*. at 78-88.

Mr. Reed also alleged claims against the defendants for tortious interference, averring that he had ongoing as well as prospective contractual relationships with sponsors to promote their goods, and ongoing and prospective contractual relationships through grindworksUSA and Team Reed. Dkt.#1 at 89-95. The Complaint stated that the defendants knew of the ongoing and prospective sponsorship and contractual relationship, and intentionally and unjustifiably interfered with these relationships, directly and proximately causing sponsorship and contractual relationships to be terminated or not to come to fruition. *Id*. Moreover,

the Complaint alleged that the defendants agreed to eliminate Mr. Reed, LIV and its golfers by maliciously defaming them and tortiously interfering with their ongoing and prospective contractual relationships, and publishing falsehoods concerning Mr. Reed's goods and services; that the defendants acted together to take numerous acts to defame Mr. Reed, LIV and its golfers, to tortiously interfere with their ongoing and prospective contractual relationships and to publish falsehoods concerning Mr. Reed's goods and services. *Id*. at 77-78.

Mr. Reed averred in the Complaint how his performance and health at tournaments has been impaired in the wake of the defendants' statements, with Mr. Reed having to employ at least two bodyguards and with onlookers shouting abuse and obscenities at him. Dkt.#1 at 11. In his Amended Complaint, Mr. Reed alleged how play at an LIV event in Florida in October of 2022 had to be stopped as a result of a bomb threat. Dkt.#28 at 36.

## II. <u>Course of Proceedings</u>

On November 18, 2022, the District Court issued an Order in which it dismissed the Complaint without prejudice and ordered Mr. Reed to file an amended Complaint. Dkt.#27 at 1, 3. The Court cited the fact that Mr. Reed's Complaint allegedly incorporated all the factual allegations into each count and the length of the Complaint as the grounds for the dismissal. *Id*. at 2-3 Mr. Reed filed an Amended Complaint on December 16, 2022. Dkt.#28. On the same date, Mr. Reed filed a

Notice of Compliance With Order of November 18, 2022, Concerning Amended Complaint, in which Mr. Reed explained at length how he had reworked his initial Complaint in good faith in order to comply with the Court's November 18, 2022, Order. Dkt.#29.

On January 13, 2023, defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch, and TGC, LLC, filed a Motion to Dismiss Amended Complaint, arguing that Mr. Reed allegedly failed to state claims for defamation. Dkt.#35 at 6-7. On the same date, defendant Gannett Satellite Information Network, LLC, and defendant Gannett Co., Inc., filed a Motion to Dismiss Amended Complaint and for Fees with Supporting Memorandum of Law, also alleging that Mr. Reed's Amended Complaint allegedly failed to state a claim against the defendants. Dkt.#38 at 26.

Mr. Reed filed an Opposition to Defendants Brandel Chamblee, Damon Hack, Benjamin Bacon, Eamon Lynch and TGC, LLC's Motion to Dismiss Amended Complaint on February 17, 2023. Dkt.#45. On the same day, Mr. Reed filed his Opposition to Defendants Gannett Satellite Information Network, LLC's, and Gannett Co., Inc.'s, Motion to Dismiss Amended Complaint and For Fees. Dkt.#46. The parties agreed to a deadline of January 15, 2024, in which to complete discovery. Dkt.#51 at 4; Dkt.#52 at 2.

On March 14, 2023, the District Court issued an Order setting an omnibus hearing for July 6, 2023, during which the Court would conduct a preliminary pretrial conference and consider any pending motions, including any motions to dismiss. Dkt.#41 at 2. Condé Nast International, Inc. d/b/a The New Yorker filed a Motion to Dismiss Amended Complaint and for Attorney's Fees and Costs on April 27, 2023. Dkt.#62.

On June 2, 2023, the District Court issued an Order rescheduling the omnibus hearing for July 31, 2023. Dkt.#71. Mr. Reed filed his Opposition to Defendant Condé Nast International, Inc. d/b/a The New Yorker's Motion to Dismiss Amended Complaint and for Attorney's Fees and Costs. Dkt.#81.

On July 31, 2023, the District Court held a hearing on the defendants' motions to dismiss in the action below and the related action of *Patrick Reed v. Shane Ryan et al.*, case number 3:22-cv-01181-TJC-PDB (M.D. Fla. 2022) (the *Ryan* action). Dkt.#86. The Court acknowledged that Mr. Reed had alleged 55 statements to be defamatory in both actions. Dkt.#87 at 5.

On September 27, 2023, the District Court entered an Order granting the defendants' motions to dismiss, dismissing Mr. Reed's Amended Complaints in both the action below and the *Ryan* action with prejudice. Dkt.#91 at 75-76. It found that Mr. Reed's claims were not time-barred, and that Florida law applied to Mr. Reed's claims. *Id*. at 20, 21. The Court proceeded to find that whether a defendant's

statements constitute defamation is a question of law for a court to determine. *Id*. at 25 (quoting *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018); citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. 1st Dist. Ct. App. 1983); *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. 3d Dist. Ct. App. 2020)). It found that particular statements were allegedly either published before Mr. Reed joined the LIV Tour, or did not specifically refer to Mr. Reed. *Id*. at 28, 29, 35. The Court furthermore concluded that the group of LIV golfers was allegedly too large for the "group libel" doctrine to apply. *Id*. at 30, 32 (quoting *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st Dist. Ct. App. 1997); quoting *Restatement of Torts 2d* § 564 (1977)).

The District Court found that many statements alleged by Mr. Reed constituted alleged opinion or rhetorical hyperbole. Dkt.#91 at 42, 48-49, 51. It proceeded to find that Mr. Reed had purportedly not alleged sufficient facts to show that the defendants had actual malice. *Id*. at 69. Finally, the Court cited the purported failure to allege actual malice, and the fact that the Court had only determined *one in over 50 statements* to be potentially defamatory, in order to reach a conclusion that allowing Mr. Reed to amend his pleading would allegedly be "futile." *Id*. at 73.

On October 20, 2023, the defendants filed a Motion for Anti-SLAPP Fees. Dkt.#92. Mr. Reed filed a Motion for Reconsideration, to Alter or Amend a Judgment, and For Relief from Judgment or Order Pursuant to Federal Rules of Civil

Procedure 59 and 60 (Motion for Reconsideration) on October 23, 2023, Dkt.#94, as well as a motion to recuse, Dkt.#95. Mr. Reed filed a Response in Opposition to Defendants' Motion for Anti-SLAPP Fees on November 29, 2023. Dkt.#99.

On January 5, 2024, the District Court issued an Order in which it denied Mr. Reed's Motion for Reconsideration and motion for recusal, and granted the defendants' Motion for Anti-SLAPP Fees.[1] Dkt.#92. On January 8, 2024, Mr. Reed timely filed a Notice of Appeal as to the District Court's September 27, 2023, Order and the Court's January 5, 2024, Order denying Mr. Reed's Motion for Reconsideration. Dkt.#101.

## III. **Standards of Review**

The Court reviews the grant of a motion to dismiss pursuant to Rule 12(b)(6) "*de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 857 (11th Cir. 2023) (quoting *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022)). It reviews "*de novo* an order denying a plaintiff leave to amend because of futility." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (citing *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011)).

---

[1] Upon information and belief, the Chief Judge presiding over the action below has been, and may yet be, a member of an exclusive club in Ponte Vedra, Florida, along with high-level PGA Tour officials. Dkt.#93 at 34.

## SUMMARY OF THE ARGUMENT

Mr. Reed, one of the most accomplished professional golfers, filed suit against the defendants for defamation, tortious interference and other claims. Among the statements alleged by Mr. Reed to be defamatory were statements by the defendants accusing Mr. Reed and other LIV players of being "murderers," working with a murderous dictator and accusing Mr. Reed personally of being an alleged cheater. Dkt.#1 at 16, 22, 23, 24, 25. Despite the numerous statements by defendants alleged by Mr. Reed, the District Court remarkably found that "only *one* may be potentially defamatory…" Dkt.#91 at 72 (emphasis added).

Instead of permitting Mr. Reed an opportunity to develop the evidence relating to his claims, the District Court erroneously made findings that all of defendants' statements constituted alleged pure opinion or rhetorical hyperbole, or were not allegedly "of and concerning" Mr. Reed. In doing so, however, the District Court failed to follow the legal requirements to make such findings as a matter of law. Moreover, the Court failed to specifically consider many of the statements set forth in Mr. Reed's Amended Complaint.

The District Court moreover erroneously concluded that Mr. Reed had allegedly failed to sufficiently plead actual malice on the part of the defendants. It also improperly applied a Florida evidentiary standard to find that Mr. Reed had supposedly insufficiently alleged his claims for tortious interference.

The District Court's misapplication of the law in order to dispose of all of the numerous claims raised by Mr. Reed on the defendants' motions to dismiss constituted error. The Court furthermore improperly found that any opportunity for Mr. Reed to further amend his pleading would allegedly be "futile." The errors by the District Court warrant reversal of the Court's Order and remand of this case for further proceedings, and to provide Mr. Reed with an opportunity to proceed on discovery relating to his claims and the defendants' statements.

# ARGUMENT

## I. The District Court Erred in Dismissing Mr. Reed's Claims With Prejudice on the Defendants' Motions to Dismiss

Mr. Reed's Amended Complaint set forth numerous statements by the defendants as being defamatory towards him. Dkt.#28 at 15-32. The District Court dismissed *all* of Mr. Reed's claims for defamation on the defendants' motions to dismiss on the grounds that (1) some of the statements allegedly constituted pure opinion, (2) some of the statements allegedly constituted "rhetorical hyperbole;" (3) the Amended Complaint supposedly failed to plead facts showing actual malice by the defendants, and (4) that some of the statements are allegedly not "of and concerning" Mr. Reed and that Mr. Reed had supposedly insufficiently alleged group libel. Dkt.#91 at 21-51, 66-69. The Court furthermore found that allowing Mr. Reed to amend his pleading would allegedly be futile. *Id*. at 73. The Court never converted the defendants' motions to dismiss into motions for summary judgment. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701 (11th Cir. 2016) ("In order to convert a motion to dismiss into a motion for summary judgment, the court must give notice to the parties and allow the parties 10 days in which to supplement the record") (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)).

## A. The District Court's Dismissal of Mr. Reed's Claims Without an Opportunity to Amend His Amended Complaint Constituted Error

The District Court concluded that dismissal of Mr. Reed's Amended Complaint with prejudice was appropriate for the reasons that Mr. Reed allegedly failed to cure the deficiencies in his initial Complaint identified in the Court's Order dismissing the Complaint. Dkt.#91 at 72-73. The Court furthermore stated that allowing Mr. Reed to amend would allegedly be "fruitless," citing the fact that the Court had only found one in over 50 statements "potentially" defamatory. *Id*. at 73.

The Court's Order dismissing Mr. Reed's original Complaint without prejudice directed Mr. Reed to incorporate into each count only the factual allegations which were relevant to the respective causes of action, and to bring only those claims that were meritorious and supported by law in his Amended Complaint. Dkt.#27 at 2-3. The Court's directives to Mr. Reed were contrary to Federal Rule of Civil Procedure 10, which permits a party to adopt statements elsewhere in a pleading by reference. *See* Fed. R. Civ. P. 10(c). Mr. Reed nevertheless filed his Amended Complaint, attempting to cure the alleged deficiencies which the Court raised concerning his original Complaint. In addition to filing his Amended Complaint, Mr. Reed also filed a Notice of Compliance With Order of November 18, 2022, Concerning Amended Complaint, in which counsel set forth seven areas pursuant to which Mr. Reed had reworked his initial Complaint in order to comply in good faith with the Court's November 18, 2022, Order. Dkt.#29 at 2-3.

The District Court, however, never provided notice to Mr. Reed that the Court viewed the allegations in his Amended Complaint regarding actual malice, or any group libel theory, as allegedly deficient. Dkt.#27. Federal Rule of Civil Procedure 15 provides that a party may amend a pleading more than 21 days after service of a responsive pleading or a motion to dismiss either with the opposing party's written consent or leave of the court, and that a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The discretion of a district court to deny leave to amend is "severely restricted." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (vacating the district court's order granting the defendant's motion to dismiss and dismissing the plaintiff's complaint for discrimination with prejudice, finding that the plaintiff "might be able to make out a plausible claim if given the opportunity to replead the factual allegations") (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)). The District Court should have afforded Mr. Reed an additional opportunity to amend his pleading to cure any alleged defects in his claims. Mr. Reed and his counsel were clearly willing to attempt to amend the Amended Complaint in order to cure any asserted defects, as demonstrated by Mr. Reed's extensive amendments to his original Complaint. Dkt.#29. The Court's failure to allow Mr. Reed an opportunity to amend his Amended Complaint constituted error.

## B. **The District Court Erred in Finding That Certain Statements By Defendants Allegedly Constituted Pure Opinion**

The District Court, in its Order, referenced the rule that statements of pure opinion are protected from claims for defamation under the First Amendment. Dkt.#91 at 39 (quoting *Turner v. Wells*, 879 F.3d 1254, 12622 (11th Cir. 2018)). It furthermore cited the standard that whether a statement constitutes pure opinion is a question of law for the Court. *Id.* at 40 (citing *Keller v. Mia. Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006); *From*, 400 So. 2d at 56–57). The Court did not cite in full the standard, pursuant to both federal and Florida law, that:

> "In determining whether an alleged libelous statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published."

*Keller*, at 717 (quoting *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d Dist. Ct. App. 1984)).

Florida defamation law provides that:

A statement is pure opinion when it is "commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. 3d DCA 2020). By contrast, a statement is mixed opinion "when an opinion or comment is made which is based upon facts regarding the plaintiff or

his conduct that have not been stated in the article or assumed to exist by the parties to the communication." *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. 3d DCA 1995) (quoting *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)).

*Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 459 (Fla. 3d Dist. Ct. App. 2023).

"An important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks ... [W]here the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise."

*Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. 4th Dist. Ct. App. 2003) (quoting *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th Dist. Ct. App. 1986)). "'Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.'" *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881, 885 (Fla. 4th Dist. Ct. App. 2003) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990); citing *Anson v. Paxson Communications Corp.*, 736 So.2d 1209 (Fla. 4th Dist. Ct. App. 1999)).

The District Court proceeded to consider the statements alleged by Mr. Reed made by Brandel Chamblee on Horace Langley's podcast:

"So if they're aligning themselves with a tyrannical, murderous leader… look if you if you look at who MBS is… centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his… of his country ask yourself I mean would you have

played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot," [Froggy] "would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin… which… and this who this guy is. He settles disputes with bonesaws."

Dkt.#28 at 16. The Court found that a reasonable listener would not understand Chamblee's comments as stating a fact about Reed's or any other LIV golfer's association with Mohammed bin Salman bin Abdulaziz Al Saud, the Crown Prince of Saudi Arabia. *Id*. at 44. It stated that the statements by Chamblee were allegedly not capable of being proven false, and that the statements constituted Chamblee's opinion. *Id*. at 45.

The District Court made no finding in its Order that the statements by Chamblee were pure opinion as opposed to statements of mixed fact and opinion. Dkt.#28 at 43-46. Nothing in the Order indicates that the Court considered whether Chamblee used any cautionary terms in suggesting that Mr. Reed and the other LIV players were allegedly aligning themselves with a murderous tyrant comparable to Adolph Hitler, Josef Stalin, Mao Zedong and Pol Pot. *Id*. The Court similarly failed to analyze the medium in which Chamblee made his statements, or the audience which he published his comments to. *Id*.

Chamblee cited no facts during the broadcast to support his statements that the Crown Prince is a tyrannical, murderous leader who has committed alleged atrocities. Dkt.#36-2. Chamblee's statements were based upon alleged facts not

stated in the podcast, and the statements constituted—at most—mixed statements of opinion and fact, rather than alleged pure opinion. Similar statements have been found to be potentially defamatory, and not protected pure opinion. *See Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 25 (D.C. Cir. 2010) (reversing the district court's grant of the defendant's motion to dismiss the plaintiff's suit for defamation, finding that "a reasonable reader could construe [a] passage [from a report published by the defendant] as asserting 'that [the plaintiff], personally, was a 'crony' of [Serbian President Slobodan] Milosevic who supported the regime in exchange for favorable treatment" and "that [the plaintiff] was actively in alliance with Milosevic and his regime'") (citing *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1091 (D.C. Cir. 2007)). Statements by Chamblee to the effect that Mr. Reed was allegedly with a doing business "directly for a murderous regime …" Dkt.#1 at 25; was supposedly playing for "blood money," *id*. at 18; or was supposedly "complicit in sportswashing," *id*. at 24; cannot plausibly be held to constitute non-actionable opinion.

The District Court proceeded to address, collectively, the statements made by Chamblee, Hack and Bacon regarding Mr. Reed on Golf Channel. Dkt.#91 at 46-52. It found that Chamblee's statement that Mr. Reed "violated that [unwritten] code in so many ways that even the rules officials themselves were sort of stammering as to how to address it," Dkt.#28 at 21, constituted commentary which cannot be

disproven, Dkt.#91 at 49. (Quoting *Turner*, 879 F.3d at 1269). Chamblee's statements regarding what Mr. Reed "ethically appeared to be doing," Dkt.#28 at 21, were plainly intended to suggest that Mr. Reed was allegedly cheating and was unethical. Chamblee's comments indicating Mr. Reed was purportedly a cheater and unethical constituted statements at the core of defamation and were actionable and not protected. *See Zambrano*, 484 So. 2d at 607 ("In this case, the [defendants] said that [the plaintiff] left his medical practice and the hospital's on-call schedule, without notice; that he neglected his practice; and that he acted in an unprofessional and unethical manner. In our view, these comments cannot be classified as pure opinion or 'rhetorical hyperbole'"). Chamblee's statements expressly referenced facts, including the undisclosed facts relating to his alleged communications with current and former PGA Tour members. Dkt.#36-5. Chamblee's statements concerning Mr. Reed were statements of mixed fact and opinion, and did not constitute pure opinion or protected speech. Dkt.#91 at 49 (citing *Ozyesilpinar*, 365 So. 3d at 460).

The District Court, without any explanation, proceeded to find that Damon Hack's and Shane Bacon's statements on Golf Channel that Mr. Reed allegedly had a "history" of unethical conduct were also "pure opinion." Dkt.#91 at 51 (quoting *Rhodes*, 852 So. 2d at 951). Under Florida law, "'[f]alse statements which suggest that someone has committed a dishonest or illegal act are defamatory *per se*.'" *Corsi*

*v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (quoting *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541–42 (M.D. Fla. 1993). Bacon's and Hack's statements concerning Mr. Reed's alleged "history" referenced facts and were not wholly opinion. Dkt.#28 at 22-24. As with the statements by Chamblee, Hack's and Bacon's statements regarding Mr. Reed's alleged unethical or dishonest conduct constituted actionable defamation under Florida law. *See LRX, Inc.*, 842 So. 2d at 886 (finding, in regard to a letter accusing one of the plaintiffs of alleged unauthorized practice of law, that "a further implication that a jury may draw from the letter is that [the plaintiff] is a loathsome, dishonest character who cannot be trusted by clients…"); *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (observing that "[w]ords are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession") (citing *Adams v. News–Journal Corp.*, 84 So.2d 549, 551 (Fla. 1955) (*en banc*)).

The District Court cited the fact that Hack's statements referenced an alleged incident while Mr. Reed was a college player. Dkt.#91 at 52. Hack's reference to the alleged incident, however, was a generalized and conclusory statement. Hack failed to mention any of the facts relating to the alleged incident, other than to assert, falsely, that Mr. Reed was allegedly kicked off the team and was allegedly forced to transfer to another university. Dkt.#36-7.

The District Court did not set forth any consideration or analysis of the entirety of the broadcasts or publications, their surrounding circumstances or their intended audience, or whether the defendants alleged made any precautionary statements, as required by law. It failed to address numerous specific statements made during the broadcasts or publications which Mr. Reed alleged in his Amended Complaint, improperly dismissing the claims *en masse*. In addition, the defendants failed to state the facts supporting their statements in the publications or broadcasts at issue.

The Court failed to properly apply the applicable legal standards in determining that the statements constituted alleged pure opinion and were allegedly protected. *See Caswell v. Manhattan Fire & Marine Ins. Co.*, 399 F.2d 417, 421 (5th Cir. 1968) (reversing the trial court's grant of summary judgment in favor of the defendant in the plaintiff's suit against the defendant insurance company relating to a report which the plaintiff alleged accused him of committing arson and lying, directing the trial court to consider the factors set forth in *Abraham v. Baldwin*, 42 So. 591 (Fla. 1906), in determining whether the statements were allegedly privileged). Reversal of the Court's Order dismissing Mr. Reed's claims in their entirety is warranted, as well as remand for the case to proceed to discovery relating to Mr. Reed's claims.

## C. **The District Court Erred in Finding That Certain Statements By Defendants Allegedly Constituted "Rhetorical Hyperbole"**

The District Court's Order also found Chamblee's statements regarding Mr. Reed and other LIV golfers and the Saudi Crown Prince, and regarding his alleged communications with PGA Tour players, to be mere "hyperbolic" opinion. Dkt.#91 at 43-45, 49. "Rhetorical hyperbole" which cannot reasonably be interpreted as stating actual facts about an individual is constitutionally protected. *See Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quoting *Milkovich*, 497 U.S. at 20; citing *Hustler Magazine v. Falwell,* 485 U.S. 46, 50, 53–55 (1987)). In order to find that a statement constitutes rhetorical hyperbole, a court must consider the circumstances in which the statement was expressed. *Id*. at 702 (citing *Keller*, 778 F.2d at 717).

The District Court's finding that the statements by Chamblee constituted alleged protected hyperbole was erroneous. A reasonable person could construe Chamblee's references to tyrannical dictators and "atrocities," coupled with his statement that Mr. Reed and the other LIV golfers were playing for alleged "blood money," to be a statement of fact that Mr. Reed and the other players were actual alleged beneficiaries of State violence or terrorism. Similarly, Chamblee's statement that he allegedly communicated with 15 to 20 current and former PGA Tour players and that, allegedly, not a single one defended what Mr. Reed is a statement of an alleged fact concerning Mr. Reed. Chamblee's statements, considered in totality, cannot be considered to be wholly protected rhetorical hyperbole. On the contrary,

Chamblee's statements were defamatory of Mr. Reed. *See Sanderson v. Caldwell*, 45 N.Y. 398, 404 (1871) ("The charge against the plaintiff that he did a good thing in collecting soldiers' and sailors' claims against the government at a fearful per centage, and that the 'blood money' he got in this way was supposed to be a 'big thing,' in connection with the fact that he was a lawyer, may fairly be construed as imputing to him unjust, dishonest and extortionate conduct in his professional capacity, and justifies the meaning attributed to it in the complaint"). The District Court's findings that Chamblee's statements amounted to mere rhetorical hyperbole were erroneous, and support reversal of the Court's dismissal of Mr. Reed's claims and remand for further proceedings. *See Presley v. Graham*, 936 F. Supp. 2d 1316, 1325 (M.D. Ala. 2013) (denying the defendants' motions to dismiss plaintiff's claims including plaintiff's defamation claim, concluding that the court could not say as a matter of law that the defendant attorney's statement to a news reporter that the plaintiff was allegedly "a supervisor's nightmare" "is rhetorical hyperbole incapable of a demonstration of falsity. This is true even if [the defendant's] statement amounts to an opinion. A reasonable reader could have concluded that [the defendant]… had access to information about the specifics of [the plaintiff's] job performance and that he based his opinion on his knowledge of these objective facts").

**D. The District Court Erred in Finding That Mr. Reed Failed to Sufficiently Plead Actual Malice**

The Court found, in its Order, that Mr. Reed had allegedly failed to plead actual malice on the part of the defendants in his Amended Complaint. Dkt.#91 at 69. As a public figure, in order to state claims for defamation under Florida law, Mr. Reed was required to allege statements which were "(1) false; (2) defamatory; (3) damaging; and (4) that the publisher acted with actual malice." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d Dist. Ct. App. 2021) (citing *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th Dist. Ct. App. 2010)). To plead actual malice, a plaintiff "'must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner*, 879 F.3d at 1273 (quoting *Michel*, 816 F.3d at 702; quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). "The test is subjective, 'focusing on whether the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'" *Id.* at 1273 (quoting *Michel*, at 702-703).

> "The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard

of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration."

*Herbert v. Lando*, 441 U.S. 153, 164 n. 12 (1979) (quoting 50 Am.Jur.2d, Libel and Slander § 352 (1970)).

Florida appellate courts have found "general allegations" of malice to be sufficient. *See Kist v. Hubbard*, 93 So. 3d 1100, 1102 (Fla. 5th Dist. Ct. App. 2012) (citing *Gangelhoff v. Lokey Motors Company*, 270 So.2d 58 (Fla. 2d Dist. Ct. App. 1972)); *see also Hood v. Connors*, 419 So. 2d 742, 743–744 (Fla. 5th Dist. Ct. App. 1982) ("[I]n Count I [the plaintiff] alleged that [the defendant] made the[ ] false remarks either knowing they were false or 'with a reckless disregard for the truth and without reasonable grounds for the Defendant' to believe they were true. He further alleged [the defendant] made these remarks with intent to injure and defame him. These allegations are sufficient to charge actual malice…") (citing *Sullivan*, 376 U.S. 254; *Lundquist v. Alewine*, 397 So.2d 1148 (Fla. 5th Dist. Ct. App. 1981); *Matthews v. Deland State Bank*, 334 So.2d 164 (Fla. 1st Dist. Ct. App. 1976)); *see also Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1368, 3169 (S.D. Fla. 2021) (where the plaintiff alleged that the defendant news network knowingly, or with reckless disregard for the truth, played a truncated clip of the plaintiff's statements in order to paint the plaintiff in a false light, finding that the plaintiff had plausibly pled a factual basis from which actual malice could be inferred

adequate to survive the defendant's motion to dismiss). In the action below, Mr. Reed expressly alleged specific facts in his Amended Complaint regarding Chamblee's and Golf Channel's history of statements concerning him, as well as the contents of past statements by the defendants. Dkt.#28 at 32-35. The Amended Complaint set forth the fact that defendants failed to report exculpatory facts relating to Mr. Reed, *id*. at 19; defendants' and the media's repeated attacks on Mr. Reed, *id*. at 15-82; and defendants' refusal to print retractions, *id*. at 36. These allegations in the Amended Complaint regarding "badges of malice" as recognized by the Supreme Court in *Herbert*, were sufficient to support a reasonable inference that the defendants knew that their statements concerning Mr. Reed were false, or that the defendants recklessly made the statements in disregard of the actual truth.

Mr. Reed's allegations in his Amended Complaint sufficiently alleged actual malice on the part of the defendants, as well as facts and circumstances from which it could reasonably be inferred that the defendants acted maliciously in publishing their statements concerning Mr. Reed. In dismissing Mr. Reed's claims, the District Court erroneously failed to focus on the  alleged mental state of the defendants in making the statements, and erred in finding that Mr. Reed had allegedly failed to sufficiently allege malice in relation to any and all of his claims for defamation. Furthermore, a number of the defendants' statements suggesting that Mr. Reed is an alleged cheater or is the recipient of monies from a brutal regime engaged in the

commission of atrocities appear to constitute defamation *per se* under Florida law, for which actual malice is implied and need not be alleged. *See Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th Dist. Ct. App. 2016) (observing that a publication is libelous *per se* where it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace or to injure a person in his or her trade or profession, and that "'[w]ords amounting to a libel per se necessarily import damage and malice in legal contemplation, so these elements need not be pleaded or proved, as they are conclusively presumed as a matter of law'") (quoting *Mid–Fla. Television Corp. v. Boyles*, 467 So.2d 282, 283 (Fla. 1985); quoting *Layne v. Tribune Co.*, 108 Fla. 177 (1933)).

The Court's dismissal of Mr. Reed's claims on alleged grounds of failure to sufficiently allege malice or the alleged circumstances of the statements merit reversal of its grant of the defendants' motions to dismiss. "Whether the evidence adduced will ultimately satisfy [the plaintiff's] burden of proving actual malice by clear and convincing evidence remains to be seen," *Dershowitz*, 541 F. Supp. 3d at 1369–1370, however Mr. Reed should have been permitted an opportunity to develop the evidence relating to his claims.

### E. **Mr. Reed Sufficiently Alleged Group Libel and Defamation By Implication**

The District Court ruled that many of the defendants' statements were allegedly not "of or concerning" Mr. Reed, and that Mr. Reed allegedly failed to sufficiently allege a group libel theory. Dkt.#91 at 25-37. It cited the rule that Florida law requires that alleged defamation be "of and concerning" the plaintiff. Dkt.#91 at 25-26 (quoting *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 1st Dist. Ct. App. 1997); citing *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021)).

The Florida District Court of Appeals in *Thomas* observed that:

> [A]lthough the "of and concerning" requirement is generally a question of fact for the jury, "it can be decided as a matter of law where the statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff' ... an impersonal reproach of an indeterminate class is not actionable.

*Thomas*, at 805 (quoting *Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995)). "'Whether the complaint alleges facts sufficient reasonably to connect the libel to the plaintiff is a question for the court, although the ultimate determination of whether the libel actually applies to the plaintiff is for the jury.'" *Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 619 (W.D. Pa. 2002) (quoting *Sack on Defamation* § 2.9.3, at 2–120 (3d ed.1999); citing *Restatement (Second) of Torts* § 617); *see also Fornshill v. Ruddy*, 891 F. Supp. 1062, 1070 (D. Md. 1995) ("Generally, the question of whether a publication is of

and concerning a defamation plaintiff is a matter for the jury to decide") (citing *The Gazette, Inc. v. Harris*, 229 Va. 1 (1985)).

The District Court seized upon the Amended Complaint's allegation that he and many top professional golfers have joined LIV. Dkt.#28 at 11; Dkt.#91 at 32. The Court concluded that the group of LIV golfers is allegedly too large for Mr. Reed to claim that any alleged defamation to LIV equates to defamation against him personally. Dkt.#91 at 32.

Under Florida law, a person may be liable for defamation of a group or class where "'(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.'" *Thomas*, 699 So. 2d at 804 (quoting *Restatement (Second) of Torts* § 558 (1977)).

> "It is not essential that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent, or if the publication contains matters of description or reference to facts and circumstances from which others may understand that he is the person referred to, or if he is pointed out by extraneous circumstances so that persons knowing him can and do understand that he is the person referred to; and it is sufficient if those who know the plaintiff can make out that he is the person meant."

*Harwood v. Bush*, 223 So. 2d 359, 362 (Fla. 4th Dist. Ct. App. 1969) (quoting 33 Am. Jur., *Libel and Slander*, 89, p. 102; citing 91 A.L.R. 1161, 1163). Furthermore,

"'if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct.'" *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (quoting *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008); quoting W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp. 1988)).

Mr. Reed's Amended Complaint alleges that the defendants' statements were of and concerning him. Dkt.#91 at 11, 17-19, 21, 22, 25, 32. Mr. Reed is among the most prominent and one of the earliest golfers to join LIV, and has been considered one of the "faces" of LIV by the golf media. Dkt.#28 at 10-11. Furthermore, several of the publications alleged to be defamatory by Mr. Reed either expressly reference Mr. Reed and/or prominently featured photographs of him. Dkt.# 36-23; Dkt.# 36-24; Dkt.#36-25; Dkt.#36-26. The District Court should have reserved the issue of whether the defendant's statements were "of and concerning" Mr. Reed, or whether the defendants were alluding to Mr. Reed, for the trier-of-fact, instead of erroneously deciding the issue as a matter of law.

Mr. Reed's allegations were sufficient to state claims for defamation and to overcome a motion to dismiss. Mr. Reed should have had an opportunity to develop the evidence concerning whom the defendants were allegedly referring to in their

statements. *See Fawcett Publications, Inc. v. Morris*, 377 P.2d 42, 52 (Okla. 1962) (affirming judgment in favor of the plaintiff, a college football player, on the plaintiff's claims for libel against a magazine publisher which published an article on the alleged use of amphetamines by athletes, finding regarding the article that "the plaintiff, although he was not specifically named therein; that the average lay reader who was familiar with the team, and its members, would necessarily believe that the regular players, including the plaintiff, were using an amphetamine spray as set forth in the article; that the article strongly suggests that the use of amphetamine was criminal; and that plaintiff has sufficiently established his identity as one of those libeled by the publication"). The issue of whom the defendants' statements referred to was an issue for the jury, and it amounted to error for the District Court to dismiss Mr. Reed's Amended Complaint on this alleged ground. *See Warner v. Missouri Pac. Ry. Co.*, 112 F. 114, 119 (C.C.W.D. Tenn. 1901) ("[L]ike malice, publication and the identity of the plaintiffs are questions for the jury, and not for the court on demurrer").

### F. The District Court's Dismissal of Mr. Reed's Claims for Tortious Interference Constituted Error

The District Court held that Mr. Reed's claims for tortious interference were barred pursuant to Florida's "single publication/single action" rule. Dkt.#91 at 70-71. Under the rule, "'if a defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply.'"

*Ozyesilpinar*, 365 So. 3d at 461 (quoting *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th Dist. Ct. App. 2002); citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)).

Florida's single publication/single action rule constitutes a standard of proof, and not a pleading standard, however. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1210 (11th Cir. 2022), *cert. denied sub nom. Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Federal procedural law provides that: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Moreover, a party may allege as many separate claims as he or she has, regardless of consistency. *See* Fed. R. Civ. P. 8(d)(3). The District Court's dismissal of Mr. Reed's tortious interference claims on motions to dismiss based upon a State evidentiary standard constituted reversible error. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (reversing the district court's grant of summary judgment in favor of the defendant as to the plaintiff's claims for alleged violation of Telephone Consumer Protection Act and for common law conversion, finding that the district court erred in holding the

plaintiff to Florida's heightened pleading standard for conversion claims); *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (*per curiam*) (finding that, despite the fact that Florida law required specific allegations of publication in the complaint, the plaintiff's complaint for libel satisfied the liberal pleading standard under Federal Rule of Civil Procedure 8(a) and that the district erred in dismissing the plaintiff's complaint).

Furthermore, under Florida law, the essential elements of a claim for tortious interference are:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship.

*Popular Bank of Fla. v. R.C. Asesores Financieros, C.A.*, 797 So. 2d 614, 622 (Fla. 3d Dist. Ct. App. 2001) (citing *Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126 (Fla.1985)). "'If a complaint alleges the necessary legal requisites of a cause of action and the allegations are sufficient to inform the defendant of the nature of the cause against him, then it must be held sufficient.'" *Id*. (quoting *Lewis State Bank v. Travelers Ins. Co.,* 356 So.2d 1344, 1345 (Fla. 1st Dist. Ct. App. 1978)). In his claims for tortious interference, Mr. Reed alleged that he had ongoing and prospective contractual relationships in the form of sponsorship agreements with specific companies including, but not limited to Titleist, Nike, Ultimate Software, cbdMD,

Callaway, Tax Slayer, Perry Ellis, NetJets, ETS, Quicken Loans, Draft Kings, Travelers, DOW, ARAMCO, CISCO, Porsche, Wells-Fargo, ROUSH, Zurich, Perry Ellis, Waste Management, Citi Bank, Houston Tourism, Taylormade, Bettinardi, and SRIXON. Dkt.#91 at 82-90, 94-95, 98-99. The Amended Complaint alleged that the defendants knew of these ongoing and prospective contractual relationships between Mr. Reed and the sponsors; that that the defendants willfully, intentionally and unjustifiably interfered with these relationships by spreading lies concerning Mr. Reed; and that Mr. Reed's ongoing relationships with sponsors were terminated, prospective relationships with sponsors did not come to fruition, and Mr. Reed suffered severe financial damages as a result. *Id*.

Mr. Reed's claims for tortious interference were sufficient to survive on a motion to dismiss for alleged failure to state a claim pursuant to Rule 8. The District Court's dismissal of Mr. Reed's claims on the alleged ground of the Florida's single publication/single action rule was error, and the judgment of the District Court should be reversed.

### G. The District Court's Dismissal of Mr. Reed's Claims Constituted Error

The pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) apply to defamation claims involving actual malice. *See Turner*, 879 F.3d at 1273 (quoting *Michel*, 816 F.3d at 702). Federal Rule of Civil Procedure 8 provides that a pleading which states a claim

for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and… a demand for the relief sought." Fed. R. Civ. P. 8(a). Rule 8 does not require "an exposition of [the pleader's] legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citing 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1219, pp. 277–278 (3d ed.2004 and Supp.2010)).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, at 556). The standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, at 556). Stated alternatively, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level…" *Twombly*, at 555-556 (citing Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed.2004); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 678.

Rule 8's standard is not satisfied by "'unadorned, the-defendant-unlawfully-harmed-me accusation[s],'" *Iqbal*, 556 U.S. at 662; "'naked assertion[s]' devoid of 'further factual enhancement,'" *id*. at 678; "labels and conclusions," *id*. at 662; "formulaic" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements…,'" *id*. at 662, 678; or even well-pleaded facts which "do not permit the court to infer more than the mere possibility of misconduct…" *id*. at 678 (Quoting *Twombly*, 550 U.S. at 555, 557; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); citing Fed. R. Civ. P. 8(a)(2)). Dismissal of a complaint "'is appropriate 'where it is clear [that] the plaintiff can prove no set of facts in support of the claims in the complaint.'" *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)). Dismissal with prejudice "'is a 'sanction of last resort, applicable only in extreme circumstances.'" *Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582, 1583 (11th Cir. 1986) (quoting *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982)).

Mr. Reed filed a lengthy Complaint in this case, alleging numerous facts in relation to the defendants and their statements. The well-pleaded allegations in both the original and Amended Complaint were abundantly sufficient to show that Mr. Reed possessed more than a speculative right to relief. The District Court erred in dismissing all of Mr. Reed's claims based upon improper findings that defendants'

statements were alleged protected pure opinions, rhetorical hyperbole or were not allegedly of or concerning Mr. Reed.

## **CONCLUSION**

Based upon the authorities and arguments set forth herein, Appellant Patrick N. Reed requests that the Order of the District Court dismissing Appellant's claims be reversed.

Respectfully submitted, this 5th day of March, 2024.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Melissa Isaak
Alabama State Bar No. 4872 A 59I
Isaak Law Firm
2815-B Zelda Road
Montgomery, Alabama 36106
Telephone: (334) 770-4636
Email: melissa@protectingmen.com

Of Counsel:
Larry Klayman
Florida State Bar No.: 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

*Counsel for Appellant Patrick N. Reed*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,386 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Melissa Isaak
Alabama State Bar No. 4872 A 59I
Isaak Law Firm
2815-B Zelda Road
Montgomery, Alabama 36106
Telephone: (334) 770-4636
Email: melissa@protectingmen.com

Counsel for Appellant Patrick N. Reed

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, pursuant to Fed. R. App. P. 21(a)(2)(A)(ii) and Fed. R. App. P. 25(d), that the foregoing filing was this 5th day of March, 2024, served by the undersigned by depositing the filing with a commercial carrier, for delivery within 3 days to the Clerk of Court and the following persons at the following addresses:

Rachel E. Fugate, Esq.
Minch B. Minchin, Esq.
Deanna K. Shullman, Esq.
Shullman Fugate PLLC
100 S Ashley Drive
Suite 600
Tampa, Florida 33602

Carol J. LoCicero, Esq.
Linda R. Norbut, Esq.
Thomas & LoCicero, PL
601 South Boulevard
Tampa, Florida 33606-2629

Emily Parsons
Jay Ward Brown
Charles David Tobin
Ballard Spahr LLP
1909 K Street, NW
Suite 12th Floor
Washington, DC 20006

*/s/ Anthony C. Lake*_____

Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Melissa Isaak
Alabama State Bar No. 4872 A 59I
Isaak Law Firm
2815-B Zelda Road
Montgomery, Alabama 36106
Telephone: (334) 770-4636
Email: melissa@protectingmen.com

Counsel for Appellant Patrick N. Reed