No. 24-10058-D

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

PATRICK REED,

Plaintiff-Appellant,

v.

BRANDEL CHAMBLEE, *et al.*

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida
No. 3:22-cv-01059-TJC-PDB

---

## ANSWER BRIEF OF APPELLEES BRANDEL CHAMBLEE, DAMON HACK, BENJAMIN BACON, EAMON LYNCH, and TGC, LLC

---

Rachel E. Fugate (Fla. Bar No. 144029)
rfugate@shullmanfugate.com
Deanna K. Shullman (Fla. Bar No. 514462)
dshullman@shullmanfugate.com
Minch Minchin (Fla. Bar No. 1015950)
mminchin@shullmanfugate.com
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL  33602
Telephone: (813) 935-5098

*Attorneys for Appellees Chamblee, Hack,
Bacon, Lynch, & TGC*

*Reed v. Chamblee, et al.*
Case No. 24-10058-D

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Cir. R. 26.1-1, Appellees Brandel Chamblee ("Chamblee"); Damon Hack ("Hack"); Benjamin Shane Bacon ("Bacon"); Eamon Lynch ("Lynch"); and TGC, LLC d/b/a "Golf Channel" ("TGC" and collectively "Golf Channel") certify that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this action and to this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to any party:

Bacon, Benjam Shane (Appellee)

Ballard Spahr, LLP (Attorneys for Appellee Conde Nast International, Inc.)

Brown, Jay W. (Attorney for Appellee Conde Nast International, Inc.)

Chamblee, Brandel E. (Appellee)

Comcast Corporation (CMCSA) (The ultimate parent company of TGC, LLC and a publicly traded corporation). To the best of Appellees' knowledge, no publicly held company owns ten percent or more of Comcast Corporation's stock.

Conde Nast International, Inc. (Appellee)

Corrigan, The Hon. Timothy J. (United State District Court Judge, Middle District of Florida)

Fugate, Rachel E. (Attorney for the Golf Channel Appellees)

*Reed v. Chamblee, et al.*
Case No. 24-10058-D

Gannett, Co., Inc. (GCI) (Appellee)

Gannett Satellite Information Network, LLC (Appellee)

Hack, Damon (Appellee)

Helfand, Zach (Appellee)

Isaak Law Firm (former Attorneys for Appellant)

Isaak, Melissa (former Attorney for Appellant)

Klayman, Larry (Attorney for Appellant)

LoCicero, Carol (Attorney for Appellees Gannet Satellite Information
    Network, LLC and Gannett Co., Inc.)

Lynch, Eamon (Appellee)

Minchin, Minch (Attorney for the Golf Channel Appellees)

NBCUniversal Media, LLC (A Delaware limited liability company and the
    owner of Appellee TGC, LLC)

Norbut, Linda R. (Attorney for Appellees Gannett Satellite Information
    Network, LLC and Gannett Co., Inc.)

Parsons, Emmy (Attorney for Appellee Conde Nast International, Inc.)

Reed, Patrick N. (Appellant)

Shullman, Deanna (Attorney for the Golf Channel Appellees)

Shullman Fugate PLLC (Attorneys for the Golf Channel Appellees)

TGC, LLC (Appellee, Delaware limited liability company, and wholly
    owned subsidiary of NBCUniversal Media, LLC)

Thomas and LoCicero, PL (Attorneys for Appellees Gannett Satellite
    Information Network, LLC and Gannett Co., Inc.)

*Reed v. Chamblee, et al.*
Case No. 24-10058-D

Tobin, Chuck (Attorney for Appellee Conde Nast International, Inc.)

*/s/ Rachel E. Fugate*

Rachel E. Fugate
Florida Bar No. 144029
rfugate@shullmanfugate.com
Deanna K. Shullman
Florida Bar No. 514462
dshullman@shullmanfugate.com
Minch Minchin
Florida Bar No. 1015950
mminchin@shullmanfugate.com
Shullman Fugate PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619

*Attorneys for Appellees Chamblee, Hack,
Bacon, Lynch, & TGC (collectively "Golf
Channel")*

## STATEMENT REGARDING ORAL ARGUMENT

Golf Channel does not believe that oral argument is necessary because this Court has been clear in its prior decisions about the strong First Amendment protections that are afforded to the type of commentary at issue in this defamation case. The case was resolved below at the dismissal stage, and this Court is fully capable of applying its own First Amendment precedent to the allegations in the Amended Complaint without devoting extra time and resources to an oral argument. Nevertheless, if this Court has any questions or concerns, Golf Channel welcomes the opportunity to address them in oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ..............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE...................................................................3

  A.  Course of Proceedings and Disposition Below ................................3

  B.  Statement of Facts.............................................................................7

  C.  Statement of Standard of Review....................................................11

SUMMARY OF ARGUMENT ................................................................12

ARGUMENT ...........................................................................................13

  I.  THE DISTRICT COURT PROPERLY DISMISSED ALL CLAIMS

    BECAUSE THE CHALLENGED COMMENTARY IS PROTECTED

    UNDER THE FIRST AMENDMENT.......................................................15

      A.    All Defamation Claims Fail Due to Lack of Actual Malice..................15

B.    Alternatively, All Defamation Claims Fail Because the Challenged Commentary is Protected Speech (i.e., Opinion, Hyperbole, not "of and Concerning" Reed) ..................................................................20

    1.    The LIV Publications ...........................................23

    2.    The FIO Publications .........................................30

C.    Tortious Interference Claims Fail under the Single-Action Doctrine ...33

D.    Any Further Issues Have Been Waived for Appellate Review .............35

II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE CASE WITH PREJUDICE...........................................37

CONCLUSION ..................................................................42

CERTIFICATE OF COMPLIANCE.......................................................43

CERTIFICATE OF SERVICE ......................................................43

## TABLE OF CITATIONS

**Cases**

*Abraham v. Baldwin*,

   42 So. 591 (Fla. 1906) ...........................................................................25

*Adams v. WFTV Inc.*,

   691 So. 2d 557 (Fla. 5th DCA 1997)....................................................29

*Affordable Aerial Photography, Inc. v. Trends Realty USA Corp.*,

   No. 23-11662, 2024 WL 835235 (11th Cir. Feb. 28, 2024).................36

*Avena v. Imperial Salon & Spa, Inc.*,

   740 F. App'x 679 (11th Cir. 2018) .......................................................39

*Blake v. Giustibelli*,

   182 So. 3d 881 (Fla. 4th DCA 2016)........................................... 19, 20

*Bongino v. Daily Beast Co., LLC*,

   No. 19-cv-14472, 2021 WL 4976287 (S.D. Fla. Feb. 9, 2021)...........33

*Byrd v. Hustler Mag., Inc.*,

   433 So. 2d 593 (Fla. 4th DCA 1983)....................................................41

*Caswell v. Manhattan Fire & Marine Ins. Co.*,

   399 F.2d 417 (5th Cir. 1968) ...............................................................25

*Cherdak v. Cottone*,

   No. 2:22-cv-634, 2023 WL 2044608 (M.D. Fla. Feb. 16, 2023) .........34

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,

    936 F. Supp. 917 (M.D. Fla. 1996) ........................................................22

\* *Corsi v. Newsmax Media, Inc.*,

    519 F. Supp. 3d 1110 (S.D. Fla. 2021) ................................... 14, 20, 32

*Dane St., LLC v. Nadeau*,

    No. 16-cv-61565, 2017 WL 11643830 (S.D. Fla. Mar. 7, 2017) ........................35

*Demby v. English*,

    667 So. 2d 350 (Fla. 1st DCA 1995) ....................................................22

*Dershowitz v. Cable News Network, Inc.*,

    668 F. Supp. 3d 1278 (S.D. Fla. 2023) ................................................17

*Don King Prods., Inc. v. Walt Disney Co.*,

    40 So. 3d 40 (Fla. 4th DCA 2010) ......................................................18

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*,

    673 F. App'x 925 (11th Cir. 2016) .....................................................11

*Fawsett Publications, Inc. v. Morris*,

    377 P.2d 42 (Okla. 1962) ....................................................................30

\* *Fortson v. Colangelo*,

    434 F. Supp. 2d 1369 (S.D. Fla. 2006) ................................... 25, 26, 32

*Fridovich v. Fridovich*,

    598 So. 2d 65 (Fla. 1992) ...................................................................34

\* *From v. Tallahassee Democrat, Inc.*,

    400 So. 2d 52 (Fla. 1st DCA 1981) ......................................... 14, 16, 25

*Gangelhoff v. Lokey Motors Co.*,

    270 So. 2d 58 (Fla. 5th DCA 1972) ....................................................19

*Gertz v. Robert Welch, Inc.,*

    418 U.S. 323 (1974) .................................................................. 19, 21

*Hagan v. Comm'r, Georgia Dep't of Corr.*,

    No. 22-cv-12180, 2023 WL 5621895 (11th Cir. Aug. 31, 2023) ........................39

*Harte-Hanks Communications, Inc. v. Connaughton*,

    491 U.S. 657 (1989) ...............................................................17

*Hay v. Indep. Newspapers, Inc.*,

    450 So. 2d 293 (Fla. 2d DCA 1984) ....................................................14

*Herbert v. Lando*,

    441 U.S. 153 (1979) ...............................................................17

*Hood v. Connors*,

    419 So. 2d 742 (Fla. 5th DCA 1982) ..................................................18

*Horace v. MD Now Med. Centers, Inc.*,

    No. 23-11337, 2024 WL 1091702 (11th Cir. Mar. 13, 2024) .............................36

*Horsley v. Feldt*,

    304 F.3d 1125 (11th Cir. 2002) ..........................................................8

*Horsley v. Rivera*,

    292 F.3d 695 (11th Cir. 2002) ....................................................... 21, 26

*In re Palm Beach Fin. Partners, L.P.*,

    No. 09-br-36379, 2013 WL 12478838  (Bankr. S.D. Fla. July 30, 2013)............42

*Jackson v. Bank of America., N.A.*,

    898 F.3d 1348 (11th Cir. 2018) ..............................................................37

*Jacoby v. Cable News Network, Inc.*,

    No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) ....................... 16, 17

*Jankovic v. Int'l Crisis Grp.*,

    593 F.3d 22 (D.C. Cir. 2010)......................................................... 27, 28

*Jews For Jesus, Inc. v. Rapp*,

    997 So. 2d 1098 (Fla. 2008) ................................................................15

*Karp v. Miami Herald Publ'g Co.*,

    359 So. 2d 580 (Fla. 3d DCA 1978)......................................................41

*Kist v. Hubbard*, 93 So. 3d 1100 (Fla. 5th DCA 2012)...........................................18

*Klayman v. City Pages*,

    No. 5:13-cv-143, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) .................... 15, 18

*Lanier v. City of Miami*,

    No. 23-cv-22510, 2024 WL 81385 (S.D. Fla. Jan. 5, 2024) ................................39

*LRX, Inc. v. Horizon Assoc. Joint Venture*,

    842 So. 2d 881 (Fla. 4th DCA 2003)....................................................33

*Lundquist v. Alewine*,

    397 So. 2d 1148 (Fla. 5th DCA 1981)...................................................................18

*Markle v. Markle*,

    8:22-cv-511, 2023 WL 2711341 (M.D. Fla. Mar. 30, 2023) ........................ 21, 34

*Markle v. Markle*,

    8:22-CV-511-CEH-TGW, 2024 WL 1075339 (M.D. Fla. Mar. 12, 2024)..........40

*Matthews v. Deland State Bank*,

    334 So. 2d 164 (Fla. 1st DCA 1976) ...................................................................19

*McIver v. Tallahassee Democrat, Inc.*,

    489 So. 2d 793 (Fla. 1st DCA 1986) ...................................................................28

*Mercola v. New York Times Co.*,

    No. 2:23-cv-545, 2024 WL 551952 (M.D. Fla. Feb. 12, 2024) ..........................40

\* *Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) ............................................................... 18, 40, 41

*Miller v. Twentieth Century Fox Int'l Corp.*,

    29 Media L. Rep. 1087 (M.D. Fla. 2000)............................................................28

*MS Life Ins. Co. v. Barfield*,

    203 F. App'x 306 (11th Cir. 2006) ......................................................................36

*Murray v. Pronto Installations, Inc.*,

    No. 8:20-cv-824, 2020 WL 6728812 (M.D. Fla. Nov. 16, 2020) ........................24

*New York Times v. Sullivan*,

376 U.S. 254 (1964) ................................................................ 24

*Nichols v. Carnival Corp.*,

423 F. Supp. 3d 1316 (S.D. Fla. 2019) ................................... 38

*Ortega v. Banco Cent. del Ecuador*,

17 F. Supp. 2d 1334 (S.D. Fla. 1998) ..................................... 35

*Ozyesilpinar, v. Reach PLC*,

365 So. 3d 453 (Fla. 3d DCA 2023) ........................... 14, 22, 32

*Parekh v. CBS Corp.*,

820 F. App'x 827 (11th Cir. 2020) ......................................... 40

*Perez v. Wells Fargo N.A.*,

774 F.3d 1329 (11th Cir. 2014) .............................................. 12

*Pullum v. Johnson*,

647 So. 2d 254 (Fla. 1st DCA 1994) ...................................... 26

*Rasmussen v. Collier Cty. Publ'g Co.*,

946 So. 2d 567 (Fla. 2d DCA 2006) ....................................... 22

*Readon v. WPLG, LLC*,

317 So. 3d 1229 (Fla. 3d DCA 2021) ..................................... 18

*Rosenblatt v. Baer*,

383 U.S. 75 (1966) .................................................................. 28

*Rubin v. U.S. News & World Report, Inc.*,

    271 F.3d 1305 (11th Cir. 2001) ................................................... 14, 32

*Rusovici v. Univ. of Cent. Fla. Bd. of Trustees*,

    No. 6:22-cv-2172, 2023 WL 9190224 (M.D. Fla. Dec. 9, 2023).........................39

*Sanderson v. Caldwell*,

    45 N.Y. 398 (1871) .............................................................24

*Santilli v. Van Erp*,

    No. 8:17-cv-1797, 2018 WL 2172554 (M.D. Fla. Apr. 20, 2018).......................27

*Shell v. AT&T Corp.*,

    No. 20-12533, 2021 WL 3929916 (11th Cir. Sept. 2, 2021)...............................36

*Skupin v. Hemisphere Media Group, Inc.*,

    314 So. 3d 353 (Fla. 3d DCA 2020) .................................................14

*Sloan v. Shatner*,

    8:17-cv-332, 2018 WL 3769968 (M.D. Fla. June 22, 2018)........................ 29, 40

*Stearns Bank, N.A. v. Shiraz Investments, LLC*,

    No. 8:12-cv-313, 2012 WL 3133679, (M.D. Fla. July 31, 2012).........................15

*Stewart v. Sun-Sentinel Co.*,

    695 So. 2d 360 (Fla. 4th DCA 1997) ................................................41

*Thomas v. Jacksonville Television, Inc.*,

    699 So.2d 800 (Fla. 1st DCA 1997) ................................................29

*Thomas v. Town of Davie*,

    847 F.2d 771 (11th Cir. 1988) .................................................................41

*Times Publishing Co. v. Huffstetler*,

    409 So. 2d 112 (Fla. 5th DCA 1982) ....................................................19

*Torpy v. Unum Life Ins. Co. of Am.*,

    No. 6:16-cv-410, 2017 WL 5239451 (M.D. Fla. Oct. 18, 2017) .........................34

*Town of Sewall's Point v. Rhodes*,

    852 So. 2d 949 (Fla. 4th DCA 2003) ....................................................32

*Trump v. Cable News Network, Inc.*,

    No. 22-cv-61842, 2023 WL 4845589 (S.D. Fla. July 28, 2023) .................. 17, 27

*Trustmark Ins. Co. v. ESLU, Inc.*,

    299 F.3d 1265 (11th Cir. 2002) .............................................................40

*Turner v. Wells*,

    198 F. Supp. 3d 1355 (S.D. Fla. 2016) ........................................ 21, 27

* *Turner v. Wells*,

    879 F.3d 1254 (11th Cir. 2018) ............................................ 14, 16, 21, 22, 24, 33

*Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*,

    558 F. Supp. 3d 1275 (S.D. Fla. 2021) ................................................35

*U.S. v. Curtis,*

    380 F.3d 1308 (11th Cir. 2004) .............................................................36

*Vesselov v. Harrison*,

    No. 23-cv-80791, 2024 WL 536061  (S.D. Fla. Jan. 4, 2024) ............................40

*Woldeab v. Dekalb Cnty. Bd. of Educ.*,

    885 F.3d 1289 (11th Cir. 2018) ............................................................41

*Zambrano v. Devanesan*,

    484 So. 2d 603 (Fla. 4th DCA 1986)....................................................33

*Zorc v. Jordan*,

    765 So. 2d 768 (Fla. 4th DCA 2000)....................................................22

**Statutes**

§ 768.295, Fla. Stat. ........................................................................................6

**Rules**

Fed. R. Civ. P. 15 ........................................................................................38

## STATEMENT OF JURISDICTION

Golf Channel agrees with the jurisdictional statement on page xii of Reed's initial brief that this is a timely appeal taken from a final decision of the trial court to the extent it relates to the merits of the claims asserted below. But Golf Channel notes that by an order dated February 27, 2024, this Court ruled that the trial court's order as it relates to fee entitlement under Florida's Anti-SLAPP statute is not final and appealable because the trial court did not determine the amount of fees. This Court therefore dismissed that part of this appeal.

## STATEMENT OF THE ISSUES

The issues in this appeal are: (a) whether, in light of this Court's strong commitment to First Amendment protections, the district court erred in dismissing professional golfer Patrick Reed's defamation action that attacks adverse sports commentary, and (b) whether the district court abused its discretion in dismissing the Amended Complaint "with prejudice" when Reed never moved to further amend his pleading, his Amended Complaint failed to comply with the court's first dismissal order, and his suit challenged protected speech.

## STATEMENT OF THE CASE[1]

### A.    Course of Proceedings and Disposition Below

This defamation action was brought by professional golfer Plaintiff-Appellant Patrick Reed. He plays for LIV Golf ("LIV"), a Saudi Arabian-owned professional golf tour that was embroiled, when Reed filed this action, in an antitrust lawsuit against the American-based PGA Tour ("PGA"). [*See* Doc. 28, pp. 6-11, ¶¶ 19–37; *Mickelson v. PGA Tour, Inc.*, No. 5:22-cv-04486 (N.D. Cal. 2022)]. As a proxy skirmish in the since-discontinued legal fight between LIV and PGA, Reed filed this suit against several golf commentators who criticized the Saudi government's use of LIV to "sportswash" its dubious record on human rights. Reed's initial filing was a 96-page, 401-paragraph Complaint.[2] [Doc. 1]. The court dismissed it *sua sponte* as a shotgun pleading with specific instructions "to incorporate into each count only the factual allegations that are relevant to the respective causes of action," and further ruled:

---

[1]    All documents that Golf Channel relies upon are contained in Reed's appendix. But because that appendix is not bookmarked, it may be difficult for this Court to find certain documents therein. To assist this Court, Golf Channel will file a supplemental appendix with certain key documents relied upon herein.

[2]    The only case below that involved the Golf Channel Appellees was *Reed v. Chamblee*, No. 3:22-cv-1059 (M.D. Fla.) ("*Reed I*"). All record citations herein are to the docket entries in *Reed I*. A separate case was filed against different parties in *Reed v. Ryan*, No. 3:22-cv-1181 (M.D. Fla.) ("*Reed II*"), and Reed's 93-page Amended Complaint *Reed II* was also dismissed in the order on appeal. *Reed II* is not at issue in this brief because it did not involve the Golf Channel Appellees.

> Reed's complaint fails to comply with the directives of
> Federal Rule of Civil Procedure 8(a). Rule 8(a) states that a
> pleading must contain "a short and plain statement of the
> claim showing that the pleader is entitled to relief. . . ."
> *Ninety-six pages and forty-two counts later, Reed's*
> *Complaint is neither short nor plain.* In drafting the amended
> complaint, Reed is instructed to reevaluate his alleged claims
> and bring only those claims that are meritorious and
> supported by law.

[Doc. 27, p. 3; citation omitted; emphasis added]. What followed was Reed's filing

of an even longer, 100-page, 404-paragraph Amended Complaint. [Doc. 28]. It

focused on statements in eight allegedly defamatory publications ("Publications"),

which appeared via television broadcast, online article, podcast, and Twitter, and fell

into two categories:

➢   ***LIV Publications***.  The first category concerns LIV, and it is

composed of Publications 1-3 and 6-8 in Reed's pleading ("LIV Publications").

[*See* Doc. 28, pp. 15-20, ¶¶ 57-75 & pp. 25-30, ¶¶ 89-110].  The six LIV Publications

include more than 20 statements about LIV and its ties to Saudi Arabia and Saudi

Crown Prince Mohammed bin Salman. Particularly, Reed complains that the LIV

Publications compare bin Salman to Vladimir Putin, Adolf Hitler, and Mao Tse Tung

and criticize bin Salman as an evil, murderous dictator who runs a tyrannical,

merciless regime comparable to South Africa under apartheid. [*Id.*]  Reed further

complains that the LIV Publications generally describe golfers who have signed onto

the Saudi-sponsored LIV organization as playing for "blood money" and "complicit in sportswashing." [*Id.*]

> ➢ **_FIO Publications_**.    The second category, which includes Publications 4 and 5 ("FIO Publications"), concerns an incident at a Farmers Insurance Open tournament in San Diego when Reed hovered over and then picked up his ball before calling an official to request "embedded ball" relief. [Doc. 28, pp. 20-25, ¶¶76-88]. Publication 5—a 13-minute video about the incident—began with an explanation of the applicable Golf Association Rule and then transitioned to a video of the actual incident, followed by commentary from the senior tournament official and an explanation from Reed about the incident. [Doc. 28, pp. 22-25, ¶¶ 83–88]. Appellees Benjamin Bacon and Damon Hack then opined that even though Reed did not appear to break any rules, they were uncomfortable with his behavior around the ball because it lacked transparency and looked bad, especially in light of Reed's "history." Bacon and Hack explained that history as including Reed having brushed away sand from around his ball during a 2019 tournament in the Bahamas (of which video was also provided in Publication 5, showing him raking sand from behind his ball, and for which Reed received a two-stroke penalty), as well as Reed's expulsion from the University of Georgia, a fact that Reed does not deny in the Amended Complaint. [*Id.*] Publication 4 is an article that was published the next

day that contained Appellee Brandel Chamblee's comments about the incident. [*Id.*, pp. 20-22, ¶¶ 76-82].

Based on those eight Publications, the Amended Complaint in *Reed I* (*see* note 2, *supra*) asserted claims for defamation, defamation by implication, defamation *per se*, and tortious interference. Golf Channel moved to dismiss that pleading on a variety of grounds, and the district court held a hearing lasting nearly three hours. [Docs. 35 & 87]. As authorized by the court, Golf Channel filed a supplemental memorandum addressing specific questions raised at the hearing. [Doc. 89]. In a 78-page order, the court dismissed with prejudice all claims against Golf Channel, carefully analyzing each of the several fatal flaws in Reed's pleading—including his failure to meet the stringent actual malice standard, his impermissible attacks on non-actionable opinion, his improper challenge to statements that did not reference him, and his disregard of the longstanding single-action rule. [Doc. 91]. Reconsideration was denied [Doc. 100],[3] and this appeal followed.

---

[3]    The court also ruled that the *Reed I* Defendants are entitled to recover their attorneys' fees under Florida's anti-SLAPP statute, § 768.295(3)-(4), Fla. Stat. [Doc. 100]. That statute allows fee recovery from a plaintiff who has filed a lawsuit "without merit" and primarily because the defendant "has exercised the constitutional right of free speech in connection with public issues . . . as protected by the First Amendment" and by Article I, § 5 of the Florida Constitution. By an order dated February 27, 2024, this Court dismissed Reed's appeal of the fee-entitlement ruling because that ruling "does not determine the amount of fees due" and is therefore not final and appealable.

**B.**    <u>**Statement of Facts**</u>

Reed's Statement of Facts on pages 2-11 of his brief fails to provide this Court with an accurate portrayal of what is at issue in this appeal, as he quotes at length specific statements (*e.g.*, Tweets on pages 7-8 and statements by Appellee Eamon Lynch on page 9) that are not even challenged as being defamatory in the Argument section of his brief. Adding to the confusion, Reed cites primarily to the allegations in his initial Complaint [Doc. 1] rather than to the Amended Complaint that was dismissed and that is the subject of this appeal. [Doc. 28]. Moreover, he does not provide the full context and setting of the challenged statements, which are central components of any dismissal analysis in a defamation case. Given the substantial deficiencies in Reed's Statement of Facts, a more thorough review of the trial court's order is appropriate.

As the court observed, Reed attacked "at least fifty" statements [Doc. 91, p. 5], which arose in the following context:

> Reed is an accomplished professional golfer. . . . After almost ten years with the PGA Tour, in June 2022, Reed and the PGA Tour parted ways. Reed then signed with LIV Golf. The allegations in *Reed I* emerge from media coverage of the tension between the PGA Tour and LIV Golf, which were "primary competitors" when Reed joined LIV. Reed sues several sports analysts and commentators who cover golf events, including [Appellees] Brandel Chamblee, Damon Hack, Benjamin Shane Bacon, and Eamon Lynch. He similarly sues publishers and media companies who published articles

> regarding LIV or Reed's relationship with LIV, including [Appellee] TGC, LLC ("Golf Channel").

[*Id.* at 3; citations omitted].

The court then systematically examined the 100-page Amended Complaint in *Reed I* and concluded that none of the challenged statements were actionable.[4]  As for the LIV Publications, the court pointed out that none of the statements at issue named Reed; instead, they merely referred to the LIV players generally through use of the words "they" "they're" and "they've."  [*Id.* at 27-37].  The court rejected Reed's contention that he was defamed under a group-libel theory because "Reed's allegations and arguments belie that LIV [with 48 players at the time] is a group so small" to fall within the doctrine.  [*Id.* at 32].  Next, the court concluded that the LIV Publications constitute "non-literal hyperbolic commentary that the First Amendment allows."  In the court's words:

> A reasonable listener of the statements at issue would not understand Chamblee's commentary as stating an actual fact about Reed or any other LIV golfer's association with bin Salman. Rather, the commentary reflects Chamblee's hyperbolic opinion about LIV golfers choosing to play for LIV given its financial support from Saudi Arabia.

---

[4]    The trial court reviewed all Publications that were linked within or otherwise central to the Amended Complaint.  *See* [Doc. 91, pp. 27-28, n.10, *citing Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (noting the incorporation by reference doctrine)].

[*Id.* at 44]. In addition, the court found that the LIV Publications were not capable of being proven false—another hallmark of non-actionable opinion. The court explained:

> Although Reed alleges the statement accuses him "of aligning himself with a tyrannical, murderous (sportswashing) leader," *whether a person "aligns" himself with another is an amorphous expression that cannot be proven or disproven*. The context of the statement supports that Chamblee expresses a hyperbolic opinion about the LIV players' affiliation with the leadership of Saudi Arabia, as immediately after the alleged statement, Chamblee states that bin Salman "runs this league, who runs that fund, which runs and funds this tour." This clarification of his opinion supports a *reasonable understanding that Chamblee disapproves of players joining LIV because of LIV's financial support and relationship with bin Salman*. Notably, Reed does not dispute that bin Salman is associated with LIV and Reed alleges that LIV "is financially backed by the Public Investment Fund of Saudi Arabia," thereby acknowledging the relationship about which Chamblee opines. In the same podcast, the alleged statement by Chamblee that LIV players were "over there purely playing for blood money" also constitutes opinion, as it is Chamblee's *subjective assessment of LIV players' conduct and is not readily capable of being true or false*.

[*Id.* at 45-46; citations and internal quotations omitted; emphasis added].

Next, the court determined that the FIO Publications—which critiqued Reed's behavior at a tournament relating to an "embedded ball"—were not defamatory because the audience was provided with the actual video showing what transpired and with the relevant facts as to what occurred, including a specific acknowledgment

9

that the officials had absolved Reed of any wrongdoing.  [*Id.* at 46-53].  As the court explained, this "commentary based on facts documented in the article constitutes pure opinion and is thus protected speech."[5] [*Id.* at 49].  Bolstering that conclusion, the court highlighted the subjective language used therein:  "*I'm just not comfortable* with [Reed's] behavior around the ball"; "*it's just hard to know* what he's doing"; "there just *seems* to be smoke"; "*[t]o me*, this looks bad for Patrick Reed." [*Id.* at 50-51; emphasis added].

The court then found another deficiency in Reed's pleading.  Because Reed did not dispute his "public figure" status, he was required to allege facts sufficient to plausibly demonstrate actual malice: that Golf Channel "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false"; instead, the court found that Reed had proffered mere "conclusory allegations" rather than any legally sufficient facts.  [*Id.* at 67-68].  As the court explained, Reed's pleading failed because the stringent actual malice standard requires more than mere allegations of "ill will" or "malice in the ordinary sense of the word," a "failure to investigate," a failure to report "potentially

---

[5]     In so ruling, the court further noted that the references to other players not having "defended" Reed's conduct and to an "unwritten ethical code" were not capable of being proven true or false and thus cannot support a defamation claim.

mitigating factors," or a refusal to retract statements—which is all that Reed had pled. [*Id.* at 68-69].

The court then found that Reed's tortious interference claim was barred by the single-action rule, which, as the court explained, bars defamation plaintiffs from asserting other causes of action based on the same publications as a defamation claim. [*Id.* at 70-71].

Because Reed's suit was meritless (for the reasons noted above) and because Reed had already been given a chance to amend (and had not requested additional amendment), the court dismissed the Amended Complaint with prejudice.[6] [*Id.* at 72-73].

## C.   <u>Statement of Standard of Review</u>

The dismissal of Reed's Amended Complaint is reviewed *de novo*. *See, e.g., Lewis v. Reyes*, No. 23-12171, 2024 WL 1155813, at *2 (11th Cir. Mar. 18, 2024). But the decision to do so *with prejudice* is reviewed for an abuse of discretion. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 927 (11th Cir. 2016) ("we review a district court's decision whether to dismiss a complaint with or without prejudice for abuse of discretion").

---

[6]     The sole statement that the court called "potentially defamatory" was only at issue in *Reed II. See* [Doc. 91 at 64]. Golf Channel Appellees, however, were not parties in *Reed II* (*see* note 2, *supra*).

Reed's contention that this second issue must be reviewed *de novo* is mistaken. As his own cited authority in *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) illustrates, the *de novo* standard as to dismissal-with-prejudice applies only if the plaintiff has moved to amend and the court has denied the plaintiff's motion as futile. *Id.* at 1340-41. But here, Reed never requested amendment, much less formally filed a motion for leave to amend or a proposed pleading. Thus, the "with prejudice" designation in the dismissal order on appeal is reviewed for an abuse of discretion.

## SUMMARY OF ARGUMENT

Reed contends that the trial court erred in entering a final order dismissing his defamation action. His 96-page initial Complaint—which was dismissed and superseded by an even longer Amended Complaint—is little more than a bloated screed against golf commentators who criticized a Saudi-backed golf association and critiqued Reed's performance at a golf tournament. Reed's unhappiness with unflattering press about LIV and himself does not create a valid cause of action for defamation. Indeed, the dismissal of this action is fully supported by controlling, First Amendment precedent that vigorously protects those—including and especially sports commentators—who express their opinions.

Contrary to Reed's suggestion, the trial court did not dismiss this case lightly. Rather, it issued a detailed, 78-page analysis explaining exactly why the statements

that Reed challenged were not actionable. As the court explained, Reed impermissibly based his claims on statements that are not capable of being proven true or false, that are hyperbolic in nature, that are not "of and concerning" Reed, and are protected opinions for which the underlying facts were disclosed to the audience. All of this resoundingly defeats his defamation claims. The court further pointed out that Reed, as an admitted public figure, failed to allege facts that would meet the stringent standard of actual malice. This too provides a standalone basis for dismissal. As for his tortious interference claims, those necessarily failed under the longstanding single-action doctrine, which has been routinely applied in both state and federal courts in Florida.

Moreover, it was not an abuse of discretion for the court to dismiss the case with prejudice. Reed never asked the trial court for a further opportunity to amend his pleading, and as the court observed, Reed had already ignored its specific instructions when he prepared his Amended Complaint. In any event, because none of the challenged statements were even actionable in the first place, any amendment would also fail.

## **ARGUMENT**

Before addressing Reed's specific arguments on appeal, it first bears noting that many opinions cited in Reed's brief—like the order on appeal—dismissed

13

defamation claims with prejudice.[7] Others, too, pre-date the seminal First Amendment decision in *New York Times v. Sullivan*—some even date back to the 1800s—and many other cited decisions hail from remote jurisdictions. Yet this Court's decision in *Turner v. Wells*, which upheld a dismissal with prejudice of defamation claims in the sports context, is virtually one-stop shopping for all of the basic legal principles that defeat Reed's case. *See* 879 F.3d at 1259–74. Reed's retreat to ancient and remote case law highlights his suit's lack of merit, as explained thoroughly below.

---

[7]     *See Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (cited affirmatively on pages 30, 36, 40 of initial brief; *affirming dismissal with prejudice* of defamation claims based on non-actionable opinion and no actual malice); *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (cited on page 26 of initial brief; *affirming dismissal with prejudice* of defamation claim); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1127 (S.D. Fla. 2021) (cited on pages 25-26 of initial brief; *granting dismissal with prejudice* of defamation claims); *Ozyesilpinar*, *v. Reach PLC*, 365 So. 3d 453, 459 (Fla. 3d DCA 2023) (cited on pages 22, 25, 38 of initial brief; *affirming dismissal with prejudice* of defamation based on pure opinion, as well as tortious interference claims); *Skupin v. Hemisphere Media Group, Inc.*, 314 So. 3d 353, 356 (Fla. 3d DCA 2020) (cited on page 21 of initial brief; *affirming dismissal with prejudice* of defamation claims based on non-actionable opinion, as well as interference claim); *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 294-296 (Fla. 2d DCA 1984) (cited on page 21 of initial brief; *affirming dismissal with prejudice* of defamation action based on non-actionable opinion); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52 (Fla. 1st DCA 1981) (cited on pages 21-22 of initial brief; *affirming dismissal with prejudice* of defamation action based on non-actionable opinion).

14

## I.    THE DISTRICT COURT PROPERLY DISMISSED ALL CLAIMS BECAUSE THE CHALLENGED COMMENTARY IS PROTECTED UNDER THE FIRST AMENDMENT[8]

### A.    All Defamation Claims Fail Due to Lack of Actual Malice

On page 30 of his initial brief, Reed acknowledges that he is a public figure subject to the actual malice standard.  This presents a daunting challenge for any defamation plaintiff.  *See, e.g.*, *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015) ("[t]he standard for actual malice therefore is a rather daunting one for public-figure plaintiffs"), *aff'd,* 650 F. App'x 744 (11th Cir. 2016).  Reed further recognizes that actual malice is a subjective standard, requiring him to allege facts showing that Golf Channel "actually entertained serious doubts as to the veracity of the published account, or [was] highly aware that the account was probably false."  [Init. Brf. at 30]. The problem, however, is that Reed pled no factual allegations in the Amended Complaint capable of supporting such a

---

[8]      Although Reed asserted the defamation claims in his Amended Complaint under three headings (defamation, defamation by implication, and defamation *per se*), all such theories are subject to the same defenses and constitutional considerations as ordinary defamation and are thus all addressed collectively herein as "defamation."  *See, e.g.*, *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107 (Fla. 2008) ("[a]ll of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of defamation by implication"); *see also Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1309 (S.D. Fla. 2015) (applying the same defenses to various defamation-related claims); *Stearns Bank, N.A. v. Shiraz Investments, LLC*, No. 8:12-cv-313, 2012 WL 3133679, at *3 (M.D. Fla. July 31, 2012) (combining the analysis for various defamation claims).

conclusion, and merely alleging the "magic words" of actual malice are not enough to meet this stringent standard. *See From*, 400 So. 2d at 55.

"To plead actual malice, [a plaintiff] must allege facts that, taken as true, would show that Defendants published the [allegedly] defamatory material with a high degree of awareness of its probable falsity," and again, mere conclusions are not enough. *See Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *5 (11th Cir. Dec. 10, 2021) (affirming dismissal of defamation claims for lack of actual malice because mere "conclusory allegations" about defendants' alleged knowledge of falsity or reckless disregard for truth/falsity were insufficient); *Turner*, 879 F.3d at 1273 (affirming dismissal of defamation claims where allegations of actual malice were merely alleged "in a conclusory matter" and "d[id] not set forth facts demonstrating that the Defendants acted in these ways").

The trial court zeroed in on this omission of allegations when it ruled that Reed had not sufficiently pled actual malice. Reed's actual malice allegations fell into four buckets: Golf Channel's (1) alleged failure to include allegedly mitigating/exculpatory information about Reed, (2) alleged failure to retract any statement that was made, (3) alleged failure to investigate, and (4) alleged history of "ill will" against Reed. The trial court correctly observed that overwhelming controlling precedent establishes that none of these allegations supports actual malice. *See, e.g.*, *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S.

16

657, 666 (1989) ("actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term"; "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"; even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" is not enough);[9] *Jacoby,* 2021 WL 5858569, at *5 ("[plaintiff] is not entitled to having Defendants credit his preferred sources of information or structure its articles in the manner that he desires"); *Trump v. Cable News Network, Inc.*, No. 22-cv-61842, 2023 WL 4845589, at *4 (S.D. Fla. July 28, 2023) ("[t]he intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood") (citation omitted; cleaned up); *Dershowitz v. Cable News Network, Inc.*, 668 F. Supp. 3d 1278, 1289 (S.D. Fla. 2023) ("ill-will, improper motive, or personal animosity

---

[9] On pages 30-31 of his initial brief, Reed cites to a footnote in a much earlier Supreme Court decision that was merely quoting "Am.Jur.2d" (namely, *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979)) to suggest that "rivalry, ill will, or hostility between the parties" supports actual malice. Such reliance is misguided. First, that was only a footnote that quoted a treatise with no analysis and certainly was not a holding in the case. Second, and more importantly, the Supreme Court specifically ruled ten years later in *Harte-Hanks* that "ill will or malice in the ordinary sense of the word" did not support actual malice. Reed did not mention this later authority in his initial brief.

plays no role in determining whether a defendant acted with actual malice") (citation omitted).[10]  Based on this legion of authority adverse to Reed's position, the trial court correctly dismissed the Amended Complaint for lack of actual malice.[11]

Reed's brief also mis-states the law on actual malice.  For instance, he cites a string of older Florida cases on page 31 of his initial brief to support his contention that mere *general* allegations of malice suffice, but those cases addressed materially different circumstances (i.e., no public figure, no defamation claim, or no media defendant).  *See Kist v. Hubbard*, 93 So. 3d 1100 (Fla. 5th DCA 2012) (reversing order granting a motion to transfer venue with no mention of any public figure); *Hood v. Connors*, 419 So. 2d 742 (Fla. 5th DCA 1982) (involving no media defendant);[12] *Lundquist v. Alewine*, 397 So. 2d 1148 (Fla. 5th DCA 1981) (involving

---

[10]    On page 31 of his initial brief, Reed cites to an earlier 2021 decision in *Dershowitz*—without alerting this Court about the later 2023 decision in *Dershowitz*, which is cited above and fatal to his position.

[11]    *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) ("a failure to investigate, standing on its own, does not indicate the presence of actual malice"); *Klayman,* 2015 WL 1546173, at *15-16 (failure to retract does not establish actual malice); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1236 (Fla. 3d DCA 2021) (finding no actual malice because defendant is "not required to balance its reporting with potentially mitigating factors") (citation and internal quotations omitted); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) ("intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood").

[12]    Actual malice is addressed in the last paragraph of *Hood* and contains no meaningful analysis.  But another decision issued the same year (1982) by the

neither any public figure nor the actual malice standard); *Matthews v. Deland State Bank*, 334 So. 2d 164 (Fla. 1st DCA 1976) (involving no public figure); *Gangelhoff v. Lokey Motors Co.*, 270 So. 2d 58 (Fla. 5th DCA 1972) (analyzing a malicious prosecution claim).

As for *Blake v. Giustibelli*, 182 So. 3d 881 (Fla. 4th DCA 2016), which Reed cites on page 33, his characterization is just plain wrong. Reed claims that *Blake* held that "words amounting to a libel per se necessarily import damage and malice in legal contemplation, so these elements need not be pleaded or proved, as they are conclusively presumed as a matter of law." But the court actually held the opposite. Reed truncated the passage that he quotes from *Blake* by omitting the lead-in sentence. Here is what *Blake* actually held, as stated on pages 884-85 of the opinion:

> After *Gertz* [*v. Robert Welch, Inc.,* 418 U.S. 323 (1974)]*,* the Florida Supreme Court recognized that, *with respect to a libel action against the media, it is no longer accurate to say that* words amounting to a libel per se necessarily import damage and malice in legal contemplation, so these elements need not be pleaded or proved, as they are conclusively presumed as a matter of law. . . . Thus, after

---

same court (Florida's Fifth District) analyzed actual malice in more detail—and did so in the context of a defamation claim against a media defendant. *See Times Publishing Co. v. Huffstetler*, 409 So. 2d 112 (Fla. 5th DCA 1982). In that case, the Fifth District made the court's position clear: an alleged "failure to investigate," "spite," "hostility," and even a "deliberate intention to harm" (which is the type of conduct Reed is alleging in this case) do not support "the constitutional requirement of actual malice." *Id.* at 113.

> > *Gertz*, in libel cases involving media defendants, fault and proof of damages must always be established.[13]

*Blake*, 182 So. 3d at 884-85 (emphasis and footnote added; citation omitted). That same point was made more recently in *Corsi*:

> Florida law applies the Supreme Court's ruling from the well-known First Amendment defamation case of *Gertz*, which eliminates presumed damages for defamation *per se* actions against media defendants. . . .[A] plaintiff suing a media defendant must nevertheless plead malice and damages.

519 F. Supp. 3d at 1119 (citations omitted). Reed thus has no support for his incorrect position that "actual malice is implied and need not be alleged."

In sum, the trial court properly dismissed all defamation claims because Reed failed to allege facts demonstrating that Golf Channel subjectively doubted anything that it said.

### B. <u>Alternatively, All Defamation Claims Fail Because the Challenged Commentary is Protected Speech (i.e., Opinion, Hyperbole, not "of and Concerning" Reed)</u>

The order on appeal is also sustainable because none of the statements challenged in the initial brief supports a cause of action for defamation. The trial

---

[13] In his Amended Complaint, Reed acknowledges that Golf Channel Appellees herein are members of the golf media and that he is challenging their media coverage. [Doc. 28, pp. 13-14, ¶¶ 48-50].

court correctly ruled that all challenged statements in *Reed I*[14] were constitutionally protected opinion, which is a question of law for the court. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) ("[w]hether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court"), *aff'd,* 879 F.3d 1254 (11th Cir. 2018). *See also Markle v. Markle*, 8:22-cv-511, 2023 WL 2711341, at *6 (M.D. Fla. Mar. 30, 2023) (same).[15] This Court has recognized that "statements of pure opinion are protected from defamation actions by the First Amendment," and if a statement is not objectively capable of being proven false or is in the nature of "rhetorical hyperbole," then it cannot form the basis for a defamation claim. *See, e.g.*, *Turner,* 879 F.3d at 1262; *see also Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (observing that the First Amendment protects non-literal assertions of fact and rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts).

---

[14]    Reed's brief blurs the two separate cases below (and all 17 defendants named therein) by cryptically alleging that the trial court found that one of the many challenged statements was potentially defamatory. [Init. Brf. at 14, 16, 19]. That one challenged statement—which the court addressed at Doc. 91 at pp. 64-65 in the section specifically entitled "*Reed II*"— was not at issue in *Reed I*. (*See* note 2, *supra*.) Thus, that statement and ruling thereon are irrelevant to this appeal, as the trial court found that none of Golf Channel's statements were defamatory.

[15]    The rationale for shielding opinions from liability is simple: "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz*, 418 U.S. at 339–40.

Building on that point, "[a] statement is pure opinion when it is commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." *Ozyesilpinar*, 365 So. 3d at 459; *see also Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) ("[c]ommentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel"). In short, a commentator's spin—grounded in an opinion of the facts or imaginative expression—is not actionable. *See Turner*, 879 F.3d at 1264–66 (finding statements that plaintiff engaged in "homophobic taunting" and exercised "poor judgment" are protected opinion based on the known, disclosed facts); *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 924 (M.D. Fla. 1996) (stating that author's book was a "fraud" is pure opinion).[16] It is within this legal framework of strong First Amendment protection that the order below must be reviewed.[17]

---

[16] *See also Demby v. English*, 667 So. 2d 350, 354 (Fla. 1st DCA 1995) (accusing an animal control director of being "inhumane" and "unreasonable" is pure opinion); *Zorc v. Jordan*, 765 So. 2d 768 (Fla. 4th DCA 2000) (alleging that a mayor "influence[d]" property values and engaged in "illegal" behavior is protected opinion).

[17] Reed's initial brief avers that the trial court improperly engaged in a superficial analysis and did not individually consider each of the dozens of allegedly defamatory statements. Yet the trial court meticulously analyzed the Publications, including the podcast linked to the Amended Complaint that Reed attacks in his

1.    *The LIV Publications*

In his initial brief, Reed limits his argument about the LIV Publications to specific statements within Publication 1, as alleged in the Amended Complaint at ¶¶ 58 and 63. [Doc. 28, pp. 16-17; Init. Brf. at 22-24].  Specifically, he argues that the following commentary by Chamblee during a podcast personally defamed him:

> So if they're aligning themselves with a tyrannical, murderous leader… look if you if you look at who MBS [Saudi Crown Prince bin Salman] is . . . centralizing power, committing all these atrocities, you look at what he's doing to the citizens of his … of his country ask yourself I mean would you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot, [Froggy] would you have played for Putin?" [Chamblee in agreement] "would you have played for Putin . . . which . . . and this who this guy is. He settles disputes with bonesaws.

[Doc. 28, p. 16, ¶ 58].

Reed's brief alleges that the above passage is defamatory because it contains false statements of fact, i.e., that Reed is associated with the Saudi Crown Prince, who, in turn, is described as a "tyrannical, murderous leader who has committed alleged atrocities."  [Init. Brf. at 22-24].  Reed further complained that a reference

---

brief.  (And, incidentally, the initial brief highlights only a handful of the more than 50 statements Reed cited in the Amended Complaint.)

during the podcast about golfers "playing for blood money" also defamed him personally.[18]  [Doc. 28, p. 17, ¶ 63].

When considering whether a statement is defamatory, one of the first steps is ascertaining the context in which the statement appears. *See, e.g.*, *Turner*, 879 F.3d at 1266 (explaining that courts must consider the "full context" in which statements are made); *Murray v. Pronto Installations, Inc.*, No. 8:20-cv-824, 2020 WL 6728812, at *5 (M.D. Fla. Nov. 16, 2020) ("[i]n determining whether an allegedly defamatory statement is an expression of fact or an expression of rhetorical hyperbole, context is paramount").  As Reed alleged, the Golf Channel Appellees are all members of the "golf media" [Doc. 28, pp. 13-14, ¶¶ 48-50]; the statements were made during a golf-focused podcast [*id.,* p. 15, ¶ 57]; and they were made within the context of high-profile controversies between the PGA Tour and the competing, Saudi-backed, LIV Tour [*see id.*, pp. 6-11, ¶¶ 19-37].  In such a sports-centric setting, the audience is expected to understand that it is listening to opinions.  In a case cited by this Court in *Turner*, the court explained:

---

[18]    To support his claim about the "blood money" comment, Reed relies on *Sanderson v. Caldwell*, 45 N.Y. 398 (1871).  The very fact that Reed has resorted to citing a New York decision from the 1800s speaks volumes—particularly when that case pre-dated the genesis of modern First Amendment law (*New York Times v. Sullivan*, 376 U.S. 254 (1964)) by almost a century.  In any event, the *Sanderson* court contemplated accusations of extortion, which is a crime.  But here, Reed has not alleged that Golf Channel accused him of committing a crime, nor could he.

> [C]ourts have recognized that sports commentaries in
> particular are likely to contain statements of opinion,
> rather than fact, because they serve as a traditional haven
> for cajoling, invective, and hyperbole.

*Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1381 (S.D. Fla. 2006); *see also From*, 400 So. 2d at 57 (finding the at-issue statements were non-actionable opinion and noting that the "statements were made in a tennis column in a local newspaper to an audience who would be expected to be aware of the tennis pro's situation").

The sports-opinion context of the Publications set the stage for the trial court's analysis, which found that, in context, all of the at-issue statements constituted non-actionable opinion.[19]  [Doc. 91, pp. 42-46].

➢     ***Opinion/Hyperbole.***  The trial court explained that a reasonable reading of the commentary at issue underscored that it was hyperbolic in nature, expressing opinion based on disclosed facts.  As the court explained:

> The context of the statement supports that Chamblee
> expresses a hyperbolic opinion about the LIV players'
> affiliation with the leadership of Saudi Arabia, as

---

[19]     On page 27 of his initial brief, Reed argues that the trial court failed to properly apply the applicable legal standards as to "pure opinion," citing to *Caswell v. Manhattan Fire & Marine Ins. Co.*, 399 F.2d 417 (5th Cir. 1968) and *Abraham v. Baldwin*, 42 So. 591 (Fla. 1906).  These cases are not relevant.  At issue in *Caswell* was an accident report authored by the National Board of Fire Underwriters that directly accused the plaintiff of having committed the crime of arson and then lying about it.  *Abraham* likewise involved an accusation that the plaintiff committed a crime (theft).  But as previously noted, Reed was never accused of any crime.  Moreover, *Abraham* involved the question of whether the accusation of a crime was privileged.  Yet privilege was not raised in the proceeding below.

> immediately after the alleged statement, Chamblee states
> that bin Salman "runs this league, who runs that fund,
> which runs and funds this tour." This clarification of his
> opinion supports a reasonable understanding that
> Chamblee disapproves of players joining LIV because of
> LIV's financial support and relationship with bin Salman.
> Notably, Reed does not dispute that bin Salman is
> associated with LIV and Reed alleges that LIV "is
> financially backed by the Public Investment Fund of Saudi
> Arabia," thereby acknowledging the relationship about
> which Chamblee opines.

[Doc. 91, pp. 45-46]. That is a direct application of this Court's instruction regarding "hyperbolic commentary that the First Amendment allows." *See Horsley*, 292 F.3d at 701-02 (11th Cir. 2002) (noting that, given the controversial topic and setting of the at-issue statement, reasonable viewers would view the statement about an anti-abortion activist being "an accomplice to murder" with "blood . . . on your hands" as "more an expression of outrage than an accusation of fact"); *see also Fortson*, 434 F. Supp. 2d at 1373-85 (calling member of rival basketball team a "thug," "thugged out," "a vacant lot," "meaningless mass," and "gangstas or wankstas" constituted non-actionable hyperbole, as no reasonable reader could interpret them as facts about plaintiff); *Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994) (calling plaintiff a "drug pusher" could not reasonably be understood as stating actual fact about plaintiff's illegal association with drugs).

> ➤ ***Statements Cannot be Objectively Proven False***. The trial court

properly recognized on page 41 of its order that statements are not capable of

defamatory meaning unless they are objectively verifiable as false. *See, e.g.*, *Trump*, 2023 WL 4845589, at *5 ("[b]eing 'Hitler-like' is not a verifiable statement of fact that would support a defamation claim"); *Santilli v. Van Erp*, No. 8:17-cv-1797, 2018 WL 2172554, at *5–6 (M.D. Fla. Apr. 20, 2018) (calling an academic a "fringe scientist," "mad professor," and "cunning scam artist" constituted opinion because such statements are not objectively false), *adopted*, 2018 WL 2152095 (May 10, 2018).[20]  As the court pointed out, that is precisely the situation here:

> Although Reed alleges the statement accuses him "of aligning himself with a 'tyrannical, murderous (sportswashing) leader,'" whether a person "aligns" himself with another is an amorphous expression that cannot be proven or disproven.  … In the same podcast, the alleged statement by Chamblee that LIV players were "over there purely playing for blood money" also constitutes opinion, as it is Chamblee's subjective assessment of LIV players' conduct and is not readily capable of being true or false.

[Doc. 91, pp. 45-46].

---

[20]    Reed has instead chosen to rely heavily on a case outside this jurisdiction—*Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 25 (D.C. Cir. 2010). His reliance is misplaced.  In entering a dismissal with prejudice of all defamation claims, the *Turner* court—as affirmed by this Court—specifically distinguished *Jankovic* on the basis that the defendant's statement there "was objectively verifiable as true or false" and was thus actionable.  *Turner*, 198 F.3d at 1369, n.4.  That same distinction exists between *Jankovic* and this case.

➢ **_Statements are not "of and Concerning" Reed_**.[21]  The trial court also observed that a reasonable listener would not understand the LIV Publications to refer to Reed, specifically [Doc. 91, pp. 27-37, 44  n.16], thereby failing to satisfy the "of and concerning" requirement for defamation.[22]  In *Miller v. Twentieth Century Fox Int'l Corp.*, the court explained that to be actionable the challenged words must meet the "of and concerning" requirement by referring "solely or especially" to the plaintiff. 29 Media L. Rep. 1087, 1091 (M.D. Fla. 2000).  Reed's own cited authority in his initial brief says that same thing.  *See Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1091 (D.C. Cir. 2007) (cited on page 24 of the initial brief; dismissing defamation claims against two of the defendants because there were "no indications that Fieldpoint or United Business were 'solely or especially' targeted by this statement").  Here, the statements neither mention Reed's name nor "solely and especially" refer to him.  Rather, the passage was introduced with the word "they're" in the first sentence, which, in

---

[21]    Though he claims on page 36 of his brief that the court should have reserved this issue for the factfinder, he nevertheless admits on page 34 that "[w]hether the complaint alleges facts sufficient reasonably to connect the libel to the plaintiff is a question for the court."

[22]    *See Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966) ("of and concerning" element of defamation is constitutionally mandated, and only statements that are "specifically directed at the plaintiff" satisfy this constitutional mandate); *accord McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986).

context, would logically refer to the LIV players generally—with the remainder devoted to other people (i.e., Hitler, Pol Pot, bin Salman, Putin).[23]  *See Sloan v. Shatner*, No. 8:17-cv-332, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018) (finding that a broadcast failed the "of and concerning" requirement because there was no mention of "plaintiff, his business, or identifying characteristics").

Moreover, as the trial court pointed out, Reed cannot benefit from a group-libel[24] theory because his own allegations admit that there were 48 LIV players. [Doc. 91, p. 32, n.12; Doc. 28, pp. 10-11, ¶ 37; *see also* Doc. 45, p. 17 (recognizing that LIV had 48 players)].  A statement about a group of that size could not

---

[23]    The court correctly observed in its order that Reed was wrong in contending that he was specifically identified in the "blood money" comment, pointing out that Reed was not actually named therein.  [Doc. 91, p. 46, n.17].

[24]    As the court fully explained on pages 25-37, the "group libel" doctrine under Florida law only applies to sustain a defamation claim if the group is so small (i.e., fewer than 25 members) that the matter can reasonably be understood as referring specifically to the plaintiff.  *See Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 804-05 (Fla. 1st DCA 1997) ("Plaintiffs face a difficult task when the statements concern groups; when a group is large, that is, composed of twenty-five or more members, courts consistently hold that plaintiffs cannot show the statements were 'of and concerning' them"); *see also Adams v. WFTV Inc.*, 691 So. 2d 557 (Fla. 5th DCA 1997) (explaining that the doctrine permits individuals within small groups—numbering no more than 25—to individually sue for defamation "when there is no specific reference to a member").

reasonably be understood to refer to Reed specifically.  That too necessarily defeats Reed's defamation claim as a matter of law.[25]

Any of the above grounds defeat Reed's argument that the challenged statements from the LIV Publications are even defamatory in the first place, much less defamatory as to him. No error has been shown.

### 2.    *The FIO Publications*

Reed contends on pages 24-28 of his brief that certain statements within Publications 4 and 5, as alleged in his Amended Complaint [Doc. 28, pp. 21-24, ¶¶ 78-80, 86-87], suggest that he is a "cheater" who engaged in unethical conduct at an FIO golf tournament, which constitutes defamation *per se*.  But Reed's arguments here contradict basic principles of defamation law.  Publication 5—which critiques Reed's behavior around an "embedded ball" at the FIO tournament—was made by Appellees Bacon and Hack within a 13-minute video on the Golf Channel, as linked in the Amended Complaint. Publication 5 included video footage showing Reed's conduct at the golf tournament, a description of the relevant rules of the United States

---

[25]    Reed's cited cases from Pennsylvania, Maryland, and Tennessee—ostensibly to show that the "of and concerning" requirement must be decided by a jury—are irrelevant because they are contrary to the Florida decisions in *Thomas* and *Adams,* which affirmed dismissals with prejudice on this issue. Equally unavailing is Reed's reliance on an old Oklahoma opinion holding that the size of a group did not matter in Oklahoma.  *Fawsett Publications, Inc. v. Morris*, 377 P.2d 42, 51-52 (Okla. 1962). That is also contrary to *Thomas* and *Adams*.

Golf Association, and an acknowledgment that PGA officials had cleared Reed of any wrongdoing. Reed also claims that he was defamed the next day by Appellee Chamblee's follow-up comments (in Publication 4) about the same incident.

The trial court again systematically analyzed all of Reed's arguments about defamation and correctly dispatched each of them by relying on well-established legal principles:

> ➤ ***No Undisclosed Facts***. In the FIO Publications, Golf Channel Appellees merely opined that they were uncomfortable with Reed's conduct— which, as sports commentators, they had every right to do. They hid no facts from the audience and thoroughly explained the basis for their opinion: they showed the audience the actual video footage of Reed; they advised the audience about the relevant rules *and* that Reed did not violate any of them; and they told the audience that Reed was cleared of any wrongdoing. Then, using cautionary words, Bacon and Hack made it clear to the audience that they were expressing their own opinions. [*See* Doc. 91, pp. 50-51, *citing*, Doc. 28, ¶ 84: "*I'm just not comfortable* with [Reed's] behavior around the ball"; "*it's just hard to know* what he's doing"; "there just *seems* to be smoke"; "*[t]o me*, this *looks* bad for Patrick Reed" (emphasis added)]. Likewise, the Chamblee FIO Publication disclosed the relevant facts, "including that PGA Tour officials cleared Reed after the incident and that Reed won the event." [*Id.* at p. 48].

31

In short, the FIO Publications constitute quintessential sports commentary. *See Fortson*, 434 F. Supp. 2d at 1381-82. With the underlying facts disclosed, the audience could draw its own conclusions from the facts presented—which resoundingly defeats a defamation claim. *See Ozyesilpinar*, 365 So. 3d at 460 (explaining that commentary based on facts included in the publication constitutes "pure opinion" and is therefore protected speech); *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. 4th DCA 2003) (finding no defamation where "anyone viewing the photograph" could draw its own conclusions).[26]

➢ ***Statements not Objectively Provable as False***. As the trial court further observed, merely accusing someone of violating an *unwritten* guideline (as Golf Channel was doing) is, by its very nature, a statement of opinion and subjective belief—not something that can be objectively proven as false.[27] So too was

---

[26] As for the challenged comments about Reed's "history," as alleged in ¶¶ 86-87, there are two obvious flaws in Reed's argument, given the context. First, the "history" topic is introduced right up front with the explicit cautionary words, "[t]o me," which frames what follows as the speaker's own opinion. And second, the trial court correctly pointed out that the audience was specifically advised about both prior incidents upon which that "history" remark was based. [Doc. 91, p. 52]. In fact, the video included footage of the referenced prior incident in the Bahamas. So again, nothing was hidden. The basis of Golf Channel's opinion was placed squarely before the audience to see and evaluate for themselves.

[27] Several of Reed's cited authorities on this point *affirmed the dismissal with prejudice* of defamation claims. *See Rubin*, 271 F.3d at 1306; *Corsi*, 519 F. Supp. 3d at 1127. His remaining cited authorities are distinguishable because they involved factual accusations that were provably false by reference to contractual obligations or governing authorities. *See LRX, Inc. v. Horizon Assoc. Joint Venture*,

Chamblee's comment that no players who he had spoken with had "defended" Reed. Indeed, Chamblee's statement constitutes his *own* subjective perception, which is not capable of being proven true or false. *See Turner*, 879 F.3d at 1264 ("[t]his statement is the Defendants' subjective assessment of Turner's conduct and is not readily capable of being proven true or false").

Based on the foregoing, none of the challenged statements that Reed raises in his brief are actionable, and the court properly dismissed his defamation claims.

## C.    All Tortious Interference Claims Fail under the Single-Action Doctrine

On pages 37-40 of Reed's brief, he argues that the dismissal of his tortious interference claims on the basis of Florida's single-action doctrine was erroneous. Reed is mistaken. *See, e.g.*, *Bongino v. Daily Beast Co., LLC*, No. 19-cv-14472, 2021 WL 4976287, at *2 n.1 (S.D. Fla. Feb. 9, 2021) ("Florida's single publication or single action doctrine prohibits multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based.  If the defamation count fails, the other counts based on the same publication must fail as well") (citation omitted), *adopted*, 2021 WL 4316099 (Sept. 23, 2021).

---

842 So. 2d 881, 885-886 (Fla. 4th DCA 2003) (challenged statements accused plaintiff of engaging in the "unauthorized practice of law"); *Zambrano v. Devanesan*, 484 So. 2d 603, 605 (Fla. 4th DCA 1986) (former medical partner accused surgeon of "walk[ing] away from his private practice and his hospital on-call schedule without prior notice" and "abandon[ing] his obligations" there).

In the first paragraph of his argument, Reed appears to concede that under Florida case law the single-action doctrine would bar this claim, and he even acknowledges the controlling Florida Supreme Court decision on this longstanding principle: *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992). But he then argues that it is merely a procedural rule in Florida state courts that has no application in federal court.[28] He cites no case so holding; nor can he, because federal courts as recently as last year have routinely applied the single-action doctrine in defamation cases to dismiss tag-along claims for interference and other torts that are based on the same essential core of facts. *See, e.g.*, *Markle*, 2023 WL 2711341, at *13 (dismissing injurious falsehood claim because it was based on the plaintiff's same statements as her failed defamation claims); *Cherdak v. Cottone*, No. 2:22-cv-634, 2023 WL 2044608, at *7 (M.D. Fla. Feb. 16, 2023) (dismissing complaint with prejudice and ruling that plaintiff "cannot bring a civil conspiracy action based on defamation while also bringing a defamation claim" because "[d]oing so violates Florida's single publication/single action rule"); *Tymar Distrib. LLC v. Mitchell Grp. USA,*

---

[28]    The single-action rule is plainly substantive, as it completely bars a party's right to tort relief beyond defamation. *See generally Torpy v. Unum Life Ins. Co. of Am.*, No. 6:16-cv-410, 2017 WL 5239451, at *5 (M.D. Fla. Oct. 18, 2017) ("[s]ubstantive law has been defined as that part of the law which creates, defines, and regulates rights") (citation omitted), *aff'd*, 741 F. App'x 673 (11th Cir. 2018). As such, his admission on page 38 that the substantive law of Florida governs the interference claim defeats his argument.

*LLC*, 558 F. Supp. 3d 1275, 1286-88 (S.D. Fla. 2021) (dismissing tortious interference claim because it was premised on defamatory statements); *Dane St., LLC v. Nadeau*, No. 16-cv-61565, 2017 WL 11643830, at *3-4 (S.D. Fla. Mar. 7, 2017) (dismissing counterclaim for tortious interference under the single-action rule); *Ortega v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 1998) (dismissing false light privacy claim arising from same allegedly defamatory publication).

In his brief, Reed further acknowledges on page 40 that his interference claims are based on his assertion about Golf Channel "spreading lies concerning [him]." That admission underscores the fact that his interference claims are just defamation claims in disguise.  The purpose of the single-action doctrine is to prevent plaintiffs from circumventing valid defenses/privileges applicable to defamation simply "by recasting essentially the same facts into several causes of action." *See Tymar*, 558 F. Supp. 3d at 1286 (dismissing claim for tortious interference).  Yet that is exactly what Reed is impermissibly attempting to do here.  Accordingly, the interference claims were properly dismissed.

## D.   <u>Any Further Issues Have Been Waived for Appellate Review</u>

As noted, Reed's initial brief addressed only a handful of the dozens of statements that he alleged to be defamatory in his 100-page Amended Complaint. Moreover, there are appealed issues (i.e., the order denying recusal) that were not

addressed in his initial brief. To the extent that Reed attempts to raise any such issues for the first time in his upcoming reply brief, he has waived them and they cannot be considered by this Court. *See, e.g.*, *Affordable Aerial Photography, Inc. v. Trends Realty USA Corp.*, No. 23-11662, 2024 WL 835235, at *4 (11th Cir. Feb. 28, 2024) ("[a]s we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court") (citation omitted); *MS Life Ins. Co. v. Barfield*, 203 F. App'x 306, 307 (11th Cir. 2006) (noting the "long-standing rule in this circuit that issues not raised in a party's initial brief on appeal are deemed waived," *citing U.S. v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) (observing that under Fed. R. App. P. 28(a)(5) "parties must submit *all* issues on appeal in their initial briefs)).

Reed has likewise waived any issues that were not prominently raised and argued in the Argument section of his initial brief. *See, e.g.*, *Horace v. MD Now Med. Centers, Inc.*, No. 23-11337, 2024 WL 1091702, at *2 (11th Cir. Mar. 13, 2024) (noting that appellant had "abandoned his argument" where he "ma[de] only passing reference to this argument in his initial brief"); *Shell v. AT&T Corp.*, No. 20-12533, 2021 WL 3929916, at *6 (11th Cir. Sept. 2, 2021) ("[appellant] fails to plainly and prominently raise these issues in the argument section of his brief and therefore we find that these issues are waived").

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE CASE WITH PREJUDICE

Reed has further failed to demonstrate any abuse of discretion by the trial court's dismissing his suit with prejudice.[29]  In its *sua sponte* order dismissing Reed's 96-page initial Complaint [Doc. 27], the court afforded Reed an opportunity to amend after finding that the initial Complaint was a shotgun pleading that failed to comply with the "short and plain" requirement of Rule 8(a).  Reed's response was to file an even longer 100-page Amended Complaint.  In its second dismissal order, at issue here, the trial court explained that Reed's amendment was likewise an improper shotgun pleading that suffered from "the same deficiencies identified in the Court's Orders dismissing Reed's original complaints." [Doc. 91, p. 22, n.9].  It follows that the trial court committed no abuse of discretion in dismissing the case with prejudice.[30]  This Court explained in *Jackson v. Bank of America., N.A.*, 898 F.3d 1348 (11th Cir. 2018) that once a "plaintiff ha[s] fair notice of the defects and

---

[29]    As explained fully in Section C of the Statement of the Case above, *see* pages 11-12, *supra*, the proper standard of review on this issue is "abuse of discretion," not the *de novo* standard that Reed argues in his brief.

[30]    Although the trial court did not ultimately dismiss the case on this specific ground (but instead opted to rule on the merits), as Reed's cited authority observed, this Court is "free to affirm the district court's dismissal on any ground that is supported by the record." *Michel*, 816 F.3d at 694 (11th Cir. 2016) (citation omitted) (cited on pages 18, 30, 40 of initial brief); *see also Royal Palm Prop., LLC v. Pink Palm Prop., LLC*, 38 F.4th 1372, 1381 n.7 (11th Cir. 2022) (recognizing "the well-settled rule that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason").

a meaningful chance to fix them" but fails to do so in an amended complaint, "the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Id.* at 1358.

Similarly, the court in *Nichols v. Carnival Corp.* dismissed an amended complaint with prejudice, explaining that:

> When a litigant, represented by counsel, files a shotgun pleading, a district court must give her one chance to replead before dismissing her case with prejudice on non-merits shotgun pleading grounds. *After that one opportunity to replead comes and goes, the district court can dismiss with prejudice if the party has still neither filed a compliant pleading nor asked for leave to amend.* In this case, Plaintiff was warned of her original complaint's pleading deficiencies. Plaintiff's amended Complaint—which is only marginally different from the original—falls woefully short of curing these deficiencies. The Court is left with the ineluctable conclusion that Plaintiff cannot state a plausible claim and that a further opportunity to amend will produce only another prolix, but legally insufficient, complaint. The Court, in the exercise of its discretion, finds that dismissal with prejudice is warranted.

423 F. Supp. 3d 1316, 1325 (S.D. Fla. 2019) (emphasis added; citations omitted). Accordingly, the "with prejudice" determination below should be affirmed.

Also problematic for Reed is the fact that at no point during the proceedings below did he ask for another opportunity to amend his pleading, much less file any motion to amend, as required by Fed. R. Civ. P. 15, or present a proposed Second Amended Complaint.  As this Court has made clear, a plaintiff *must* file a proper

motion for leave to amend—without which a district court has the discretion to preclude any further amendment. *See, e.g.*, *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (affirming dismissal without leave to amend: "we've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend"); *see also Hagan v. Comm'r, Georgia Dep't of Corr.*, No. 22-cv-12180, 2023 WL 5621895, at *6 (11th Cir. Aug. 31, 2023) (explaining that a district court is not required to *sua sponte* grant a plaintiff leave to amend where plaintiff was represented by counsel yet "never moved to amend her complaint").[31]  Because Reed squandered two opportunities to file a legally sufficient pleading, and he never moved for any further opportunity to amend, there was no abuse of discretion below in dismissing Reed's suit with prejudice.

What's more, this Court has further held that no opportunity to amend must be given to a defamation plaintiff where (as here) the statements upon which the defamation claims are based are not actionable in the first place.[32]  *See, e.g.*, *Parekh*

---

[31]      *Accord Lanier v. City of Miami*, No. 23-cv-22510, 2024 WL 81385, at *7 (S.D. Fla. Jan. 5, 2024) (dismissing amended complaint with prejudice because "[t]he Court will not now afford [plaintiff] another bite at the apple where he declined to follow the well-trodden procedural path toward amendment" by filing a motion to amend) (citation omitted); *Rusovici v. Univ. of Cent. Fla. Bd. of Trustees*, No. 6:22-cv-2172, 2023 WL 9190224, at *14 (M.D. Fla. Dec. 9, 2023) ("a district court need not give the plaintiff another chance when the court has already given instructions concerning a deficiency in the complaint and the plaintiff squanders it").

[32]      On page 18 of his brief, Reed mistakenly argues that the trial court should have converted the motion to dismiss into a motion for summary judgment

*v. CBS Corp.*, 820 F. App'x 827, 834 (11th Cir. 2020) (affirming dismissal with prejudice and noting that "[w]e agree with the district court that leave to amend would be futile, because no amendment could correct the deficiency that the statements in the news report are not defamatory as a matter of law"); *accord Markle v. Markle*, 8:22-CV-511-CEH-TGW, 2024 WL 1075339, at *13 (M.D. Fla. Mar. 12, 2024) (dismissing defamation claims with prejudice because the "statements on which the claims are based are not actionable"); *Mercola v. New York Times Co.*, No. 2:23-cv-545, 2024 WL 551952, at *2, 5, n.1 (M.D. Fla. Feb. 12, 2024) (dismissing defamation claim with prejudice because any amendment would be pointless where "challenged statements cannot support a defamation action"); *Sloan*, 2018 WL 3769968, at *7 (holding that dismissal with prejudice is appropriate where "[a]mending would be futile because a viable defamation action does not exist based on the statements Plaintiff" attributes to the defendant).[33]

---

before disposing of the case, citing *Michel*, *supra*. *Michel*, however, dismissed an *initial* complaint and involved evidence *outside* the pleading. By contrast, the dismissal here was properly based on the face of the Amended Complaint and its incorporated Publications. *See Horsley*, 304 F.3d at 1134-1135 (publication under attack in defamation action may be considered at dismissal stage under "incorporation by reference" doctrine); *accord Vesselov v. Harrison*, No. 23-cv-80791, 2024 WL 536061, at *4 (S.D. Fla. Jan. 4, 2024). Reed's reliance on *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1268 (11th Cir. 2002) is odd because this Court ruled therein that the failure to follow the procedures to convert a motion to dismiss to a motion for summary judgment constituted harmless error.

[33]    Neither of the cases that Reed cites to justify further amendment involved a defamation claim or even any analogous circumstances. *See Woldeab v.*

For these many reasons, Reed's argument that he should have been given another opportunity to amend his pleading is without merit. In fact, his own cited authority, *Michel*, only bolsters Golf Channel's position. Specifically, this Court in *Michel* recognized the critical role that courts play in quickly disposing of untenable defamation claims because of the chilling effect of such claims' pendency on defendants' free speech rights. *See Michel*, 816 F.3d at 702 (noting the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation").[34] Thus, the trial court did not abuse its discretion by declining to give Reed a third bite at the apple and dismissing his meritless, speech-chilling suit with prejudice.[35]

---

*Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (cited on page 20 of initial brief; dismissing an *initial* complaint of a *pro se* plaintiff for employment discrimination); *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (cited on page 20 of initial brief; dismissal an *initial* complaint by automobile accident victim asserting a § 1983 action against police). Unlike those non-defamation cases, Reed has twice attempted and failed to plead a sustainable defamation claim.

[34]    *See Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing courts' "prominent function" in disposing of meritless defamation suits, including at the dismissal stage); *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978) (noting the "chilling effect of libel suits upon First Amendment freedoms"); *see also Stewart v. Sun-Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (same).

[35]    Golf Channel also argued that all issues as to the FIO Publications were time-barred by the one-year statute of limitations in Texas. [Doc. 35, pp. 7-12; Doc. 87, Transcript at pp. 31-34]. In support, they argued that Reed is a Texas citizen, that any alleged injury would have occurred in Texas, that none of the allegedly defamatory conduct occurred in Florida, and that Reed had previously admitted that

## CONCLUSION

Based on the foregoing, Golf Channel Appellees request that this Court affirm the order entered below, which dismissed all claims against them with prejudice.

Dated: May 6, 2024

/s/ Rachel E. Fugate
Rachel E. Fugate
Florida Bar No. 144029
rfugate@shullmanfugate.com
Deanna K. Shullman
Florida Bar No. 514462
dshullman@shullmanfugate.com
Minch Minchin
Florida Bar No. 1015950
mminchin@shullmanfugate.com
Shullman Fugate PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
Telephone: (813) 935-6098

*Attorneys for Golf Channel*

---

a substantial part of the events giving rise to those claims occurred in Texas. The court disagreed, finding that the factors in Florida's "significant relationship" test (to determine choice of law) were either neutral or "weigh[ed] *slightly* in favor of Florida." [Doc. 91, pp.16-20; emphasis added]. As this shows, it was a close call at the dismissal stage. If this case had been allowed to proceed, this issue may well have been revisited at summary judgment, creating yet another significant headwind for Reed in this suit. *See generally In re Palm Beach Fin. Partners, L.P.*, No. 09-br-36379, 2013 WL 12478838, at *13 (Bankr. S.D. Fla. July 30, 2013) (noting that it is often premature at dismissal stage to address "significant relationship" test due to its fact-intensive nature).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the typeface and type style rules set forth in Fed. R. App. P. 32(a)(5)(A) and 32(a)(6), and with the type-volume limitation contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), because the brief is in a proportionally-spaced Times New Roman 14-point font and contains approximately 10,949 words (exclusive of the portions of the brief that do not count toward the word count as specified in Fed. R. App. P. 32(f)).

*/s/ Rachel E. Fugate*
Rachel E. Fugate

## CERTIFICATE OF SERVICE

I certify that on May 6, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Rachel E. Fugate*
Rachel E. Fugate