IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Appeal Number 24-10058-D

PATRICK REED,

*Appellant*

v.

BRANDEL CHAMBLEE, *et al.*

*Appellees.*

On Appeal from the United States District Court
for the Middle District of Florida, Jacksonville Division,
3:22-cv-01059-TJC-PDB

**REPLY BRIEF OF APPELLANT**
**PATRICK NATHANIEL REED**

Anthony C. Lake
State Bar of Georgia No. 431149
GILLEN & LAKE LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No. 246220
KLAYMAN LAW GROUP P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

*Counsel for Appellant Patrick N. Reed*

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

PATRICK REED,

     Appellant

v.

BRANDEL CHAMBLEE, *et al*.

     Appellees.

Appeal Number 24-10058-D

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Patrick Reed, Appellant, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party, as follows:

Bacon, Benjamin S., Appellee

Brown, Jay W., counsel for Appellee Conde Nast International, Inc.

Chamblee, Brandel E., Appellee

Conde Nast International, Inc., Appellee

Corrigan, Timothy J., United States District Judge

Fugate, Rachel E., counsel for Appellees

C-1

Gannett Co., Inc., Appellee

Gannett Satellite Information Network, Appellee

Golfweek, Appellee

Hack, Damon, Appellee

Klayman, Larry E., counsel for Appellant

Lake, Anthony C., counsel for Appellant

LoCicero, Carol J., counsel for Appellees

Lynch, Eamon, Appellee

Minchin, Minch B., counsel for Appellees

Norbut, Linda R., counsel for Appellees

Parsons, Emily, counsel for Appellee Conde Nast International, Inc.

Patrick Nathaniel Reed, Appellant

Shullman, Deanna K., counsel for Appellees

Tobin, Charles D., counsel for Appellee Conde Nast International, Inc.

TGC, LLC, Appellee

Respectfully submitted, this 27th day of June, 2024.

*/s/ Anthony C. Lake*_____

Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

Of Counsel:
DCA
Larry Klayman
Florida State Bar No. 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

*Counsel for Appellant Patrick N. Reed*

## <u>TABLE OF CONTENTS</u>

Certificate of Interested Persons and Corporate

    Disclosure Statement ……………………………………….……… C-1

Table of Contents …………………………………………………………. i

Table of Citations …………………………………………..……..... iii

Argument …………………………………………………………..... 2

    I. Mr. Reed's Amended Complaint Plausibly

      Alleged Actual Malice ……………………………………………… 2

    II. Defendants' Statements Were Not

      Protected "Pure Opinion" or "Hyperbole" ……………………...………. 9

    III. Mr. Reed Plausibly Alleged that Defendants'

      Statements Were "Of and Concerning" Him …………………….……. 14

    IV. The Trial Court Erred in Dismissing

      Mr. Reed's Claims for Tortious Interference …………………………. 17

    V. The Trial Court Abused Its Discretion, or Erred,

      in Finding That Further Amendment Would Be

      "Futile" and Dismissing Mr. Reed's Claims

      With Prejudice ……………………………………………… 19

    VI. The Trial Court's Erroneous Dismissal of

      Mr. Reed's Claims Has Not Been Waived ……………………… 23

i

Conclusion ……………………………………………………………...….. 25

Certificate of Compliance ……………………………………………………... 27

Certificate of Service ………………………………………………....…….. 28

# <u>TABLE OF CITATIONS</u>

## <u>Cases</u>

*Adams v. WFTV, Inc.*, 691 So. 2d 557 (Fla. 5th DCA 1997) …………….....……… 16

*Akai Custom Guns, LLC v. KKM Precision, Inc.*,

      No. 20-CV-61469-RS, 2023 WL 8449374

      (S.D. Fla. Dec. 6, 2023) ………………………………………….....……… 12

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,

      416 F.3d 1242 (11th Cir. 2005) ………………………………………….. 8

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,

      456 U.S. 556 (1982) ………………………………………………....….. 25

*Anyanwu v. Columbia Broadcasting System, Inc.*,

      887 F. Supp. 690 (S.D.N.Y. 1995) …………………………………….…… 17

*Babb v. Sec'y, Dep't of Veterans Affs.*,

      992 F.3d 1193 (11th Cir. 2021) ……………………………………….. 23

*Bongino v. Daily Beast Co., LLC*,

      No. 19-cv-14472, 2021 WL 4976287

      (S.D. Fla. Feb. 9, 2021) …………………………………….……… 17

*Bourff v. Rubin Lublin, LLC*,

      674 F.3d 1238 (11th Cir. 2012) …………………………….…...……….. 23

*Cable News Network, Inc. v. Young*,

No. 1D2023-2237, 2024 WL 2947726

(Fla. 1st DCA June 12, 2024) …………………………….…………… 4

*Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) ……………………………… 19

*Conley v. Gibson*, 355 U.S. 41 (1957) …………………………………………… 21

*Daytree at Cortland Square, Inc. v. Walsh*,

332 F. Supp.3d 610 (E.D.N.Y. 2018) ……………………………………… 16

*Elias v. Rolling Stone LLC*, 872 F.3d 97 (2d Cir. 2017) ………………….... 16, 17

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,

647 So. 2d 812 (Fla.1994) …………………………………………..…. 19

*Files v. Deerfield Media (Mobile), Inc.*,

No. CV 19-0742-WS-B, 2020 WL 1161089

(S.D. Ala. Mar. 10, 2020) ………………………………….……………….. 4

*Fla. Med. Ctr., Inc. v. New York Post Co.*,

568 So. 2d 454 (Fla. 4th DCA 1990) ………………………..………… 9, 11, 12

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) ………………………..…… 8

*Fuste v. Riverside Healthcare Ass'n, Inc.*,

575 S.E.2d 858 (Va. 2003) ……………………………………………… 12

*Gilmore v. Jones*, 370 F. Supp.3d 630 (W.D. Va. 2019) …………………..…… 6, 12

*Gossard v. Adia Servs., Inc.*, 723 So. 2d 182 (Fla. 1998) ………………………… 18

iv

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999) ……………………...…… 19

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,

    491 U.S. 657 (1989) …………………………………………………………… 6

*Horace v. MD Now Med. Centers, Inc.*,

    No. 23-11337, 2024 WL 1091702

    (11th Cir. Mar. 13, 2024) ………………………………………………….. 24

*Jefferson v. Sewon Am., Inc.*,

    891 F.3d 911 (11th Cir. 2018) …………………………………...……… 23

*Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008) ……………………… 18

*Julmist v. Prime Ins. Co.*, 92 F.4th 1008 (11th Cir. 2024) ………………….…. 23

*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991) ……………………………….. 23

*Kelley v. Hearst Corp.*, 157 N.Y.S.2d 498 (1956) …………………………………. 12

*Lipsig v. Ramlawi*, 760 So. 2d 170 (Fla. 3d DCA 2000) …………………………. 10

*McLellan v. Mississippi Power & Light Co.*,

    526 F.2d 870 (5th Cir. 1976) …………………………………...……….. 21

*McSmith v. Unite Here Loc. 23*,

    No. 21-10078, 2022 WL 1718979

    (11th Cir. May 27, 2022) ……………………………………..……… 24

*Metabolife Int'l, Inc. v. Wornick*,

    264 F.3d 832 (9th Cir. 2001) …………………………….………………… 8

*Miccosukee Tribe of Indians of Fla. v.*

    *So. Everglades Restoration Alliance,*

    304 F.3d 1076 (11th Cir. 2002) …………………………………….…….. 8

*Michel v. NYP Holdings, Inc.*,

    816 F.3d 686 (11th Cir. 2016) …………………………………...………… 11

*Miller v. Sawant*, 18 F.4th 328 (9th Cir. 2021) …………………………… 21

*Miller v. Sawant*, 811 F. App'x 408 (9th Cir. 2020) …………………………… 22

*MS Life Ins. Co. v. Barfield*,

    203 F. App'x 306 (11th Cir. 2006) ……………………………..………….. 24

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ……………………..…….. 14

*Pacquiao v. Mayweather*,

    803 F. Supp.2d 1208 (D. Nev. 2011) …………………………………….. 3, 4

*Palm Beach Newspapers, Inc. v. Early*,

    334 So. 2d 50 (Fla. 4th DCA 1976) ……………………….…………… 14

*Perry v. Cosgrove*, 464 So. 2d 664 (Fla. 2d DCA 1985) ………………………….. 6

*Presley v. Graham*,

    936 F. Supp.2d 1316 (M.D. Ala. 2013) …………………….………… 12

*Pye v. Warden, Georgia Diagnostic Prison*,

    50 F.4th 1025 (11th Cir. 2022) …………………………………………… 23

*Richard v. Gray*, 62 So. 2d 597 (Fla. 1953) ……………………………………… 6

*Scott v. Busch*, 907 So. 2d 662 (Fla. 5th DCA 2005) ……………………………… 10

*Shell v. AT&T Corp.*,

    No. 20-12533, 2021 WL 3929916

    (11th Cir. Sept. 2, 2021) …………………………………………………… 24

*St. Amant v. Thompson*, 390 U.S. 727 (1968) …………………………………….. 6

*Summit Off. Park, Inc. v. U.S. Steel Corp.*,

    639 F.2d 1278 (5th Cir. 1981) …………………………………………...…… 21

*Tamiami Trail Tours, Inc. v. Cotton*,

    463 So. 2d 1126 (Fla.1985) …………………………………...…………… 19

*Thomas v. Jacksonville Television, Inc.*,

    699 So. 2d 800 (Fla. 1st DCA 1997) ……………………………...…… 15, 17

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) …………………………...…… 9

*United States v. Hougham*, 364 U.S. 310 (1960) …………………………………… 21

*Wagner v. First Horizon Pharm. Corp.*,

    464 F.3d 1273 (11th Cir. 2006) …………………………………………… 18

*Zimmerman v. Buttigieg*,

    576 F. Supp.3d 1082 (M.D. Fla. 2021) ……………………………..... 9, 18

**Federal Rules**

Fed. R. Civ. P. 8 ………………………………………………………………... 18

Fed. R. Civ. P. 15 ……………………………………………………………… 21

## Other Authorities

3 *Moore's Federal Practice* (2d ed. 1976) …………………………….……………. 21

*Restatement (Second) of Agency* (1957) ………………………………………… 25

*Restatement (Second) of Torts* (1977) ………………………………………….. 15, 18

Manuel Socias,

    *Showing Constitutional Malice in Media Defamation*,

    FLA. B.J. (2018) …………………………………………………………….. 4, 7

Patrick Nathaniel Reed, a highly-accomplished professional golfer, brought the action below against several professional golf commentators and media corporations, including Brandel Chamblee, Damon Hack, Shane Bacon and TCL, LLC (collectively, Golf Channel Defendants) and Gannett Satellite Information Network and Conde Nast International, Inc. (collectively, Gannett Defendants), alleging that Defendants published statements concerning Mr. Reed accusing him of not only being a "murderer" but of "cheating" and having a "history of cheating"— one of the most damning and damaging accusations which a professional athlete can endure—and falsely and maliciously denouncing Mr. Reed and other professional golfers with LIV Golf of being "murderers" and actively doing business with, and "sportswashing" for, the Saudi Arabian government, which Defendants assert is engaged in the commission of murder and atrocities.[1] Dkt.#28-15-31. Mr. Reed's Amended Complaint against Defendants was 100 pages long, and set forth over 50 statements published by Defendants which Mr. Reed alleged were defamatory and maliciously or recklessly made. Dkt.#28; Dkt.#99-19.

After dismissing all of Mr. Reed's claims without prejudice on its own initiative, nearly a year later the trial court disposed all of Mr. Reed's claims with prejudice on Defendants' motions to dismiss, on the ground that certain of

---

[1] The Golf Channel Defendants' brief is referenced herein as the "GC Brief," and the Gannett Defendants' brief is referenced as the "Gannett Brief."

Defendants' statements were allegedly not "of or concerning" Mr. Reed, were alleged "pure opinion" or "rhetorical hyperbole" and were protected, and that Mr. Reed failed to allege sufficient facts to show actual malice on the part of Defendants. Dkt.#27; Dkt.#91-37, 42-52, 65-69.

Mr. Reed alleged abundant facts below to support a finding that Defendants published numerous statements concerning Mr. Reed, which were published with malice and with knowledge that they were false or with reckless disregard for their falsity, causing substantial injury to Mr. Reed's reputation and professional livelihood. Mr. Reed should have been allowed some opportunity to reach the merits of his claims, and not have had his case dismissed based upon an improper, adverse construction of his allegations.

## **ARGUMENT**

### I. **Mr. Reed's Amended Complaint Plausibly Alleged Actual Malice**

The Golf Channel Defendants commence their brief with a contention that Mr. Reed alleged "no facts" in his Amended Complaint capable of supporting a finding of actual malice. GC Brf., pp. 15-16. The trial court erroneously found, in a single sentence, that Mr. Reed had attempted to allege actual malice by alleging that Defendants failed to disclose material exculpatory information, and did not retract their statements. Dkt.#91-68. Both Defendants and the trial court's characterizations of Mr. Reed's Amended Complaint are erroneous and incomplete.

2

Mr. Reed's Amended Complaint laid out numerous facts which plausibly could support a finding that Defendants acted with malice or with reckless disregard for the truth in making statements regarding Mr. Reed and other prominent LIV players, and therefore plausibly alleged actual malice for the purposes of Defendants' motions to dismiss. The Amended Complaint set forth the fact that Chamblee, Hack, Bacon and Lynch are employed by, or work closely with, the Golf Channel, which is a partner of the PGA Tour. Dkt.#28-8. It furthermore averred the fact that Mr. Reed became a "lightning rod" for the Defendants in their efforts to defame and disparage LIV and its golfers, including Mr. Reed. *Id*. at 11. Mr. Reed alleged that Defendants engaged in concerted action to defame and damage Mr. Reed, LIV and its players *Id*. at 7.

These allegations by Mr. Reed alone were sufficient to allege actual malice on the part of the Defendants to overcome dismissal, as illustrated by the decision in *Pacquiao v. Mayweather*, 803 F. Supp.2d 1208 (D. Nev. 2011), in which the district court denied the defendants' motions to dismiss the plaintiff professional boxer's complaint for defamation based upon statements that the plaintiff allegedly used performance enhancing drugs, finding that the allegations of the complaint were sufficient to allege actual malice where the plaintiff alleged that the defendants were "motivated by ill-will, spite, malice, revenge, and envy.. and… set out on a course designed to destroy [the plaintiff's] career, reputation, honor, legacy, and jeopardize

3

his ability to earn the highest levels of compensation," *id*. at 1214. Furthermore, as one commentator has recognized, the "badges" of malice may include "a reporter's ill will toward the plaintiff…" Manuel Socias, *Showing Constitutional Malice in Media Defamation*, FLA. B.J. 40 (2018) (Socias) (footnote omitted).

In this case, Mr. Reed alleged that defendants' malicious and false attacks on him were with the intent to damage his reputation and resulted in the loss of millions in corporate sponsorships and business opportunities. Dkt.#28-5. Following *Pacquiao*, Mr. Reed's allegations regarding the Defendants' ill will towards him, and intent to damage his professional reputation and business opportunities should have been found sufficient to allege actual malice for the purposes of the Defendants' motions to dismiss.

Furthermore, other courts have recognized that a defendant's use of language which implies illegality or violence may demonstrate actual malice. *See Cable News Network, Inc. v. Young*, No. 1D2023-2237, 2024 WL 2947726, at *2 (Fla. 1st DCA June 12, 2024) (finding that the plaintiff had shown actual malice where the defendant news network chose to use language in its story such as "black market," which implied illegality); *Files v. Deerfield Media (Mobile), Inc.*, No. CV 19-0742-WS-B, 2020 WL 1161089, at *3 (S.D. Ala. Mar. 10, 2020) (holding that the defendants failed to show the plaintiff had not plausibly asserted a claim for defamation where the defendants "call[ed] [the plaintiff] a rapist and a pillager (as

4

the complaint alleges)…"). Mr. Reed's Amended Complaint set forth statements published by Defendants which accused Mr. Reed of illegality or complicity in alleged violence. For instance, Chamblee published statements that Mr. Reed and the other LIV golfers were "**doing business in a country and directly for a murderous regime…**" Dkt.#28-26; that "**Golf won today. Murderers lost**," *id*. at 25; and "**[W]ould you have played for Stalin would you have played for Hitler would you have played for Mao would you play for Pol Pot[?] [W]ould you have played for Putin… which… and this who this guy is**," *id*. at 37. Similarly, Lynch remarked on the harm to Mr. Reed's and other LIV golfers' reputations "**that comes with taking guaranteed cash to sportswash Saudi atrocities**." *Id*. at 28. Chamblee effectively accused Mr. Reed and LIV golfers of playing professionally for a government which engages in violence as a matter of practice, and which is equivalent to history's most heinous and murderous dictators. Lynch's "sportswashing" remarks similarly disparaged the reputation of Mr. Reed and LIV players in charging them with allegedly being paid off in order to cover up for alleged government violence. Actual malice or reckless disregard for the truth could be inferred from Defendants' statements.

As found by the trial court, Mr. Reed also alleged that Defendants ignored or omitted facts which were exculpatory. Dkt.#28-22, 23, 25. While failure to investigate, standing alone, does not support a finding (as a matter of proof, not

pleading) of actual malice, purposeful avoidance of the truth may. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). For instance, Bacon and Hack made the following statements concerning Mr. Reed:

> **To me, this looks bad for Patrick Reed, a guy that has history of doing these things. …**
>
> **So now we have to lean on the fact that Patrick Reed does have a history. … So we already have this situation. And we have the smoking mirrors about his time in Georgia where he was kicked off of the team and had to transfer to Augusta State. So he does have a history and now we have another situation. …**

Dkt.#28-48-49. Not only were Bacon's and Hack's statements defamatory *per se* in subjecting Mr. Reed to contempt and disgrace, and in injuring him in his profession, *see Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985) (citing *Richard v. Gray*, 62 So. 2d 597 (Fla. 1953)), but Defendants also failed, before making their statements, to either report or investigate the fact that Mr. Reed, as he alleged in his Amended Complaint, had never been found to have cheated, and Mr. Reed's former coaches have provided affidavits to his counsel attesting to this fact. Dkt.#28-23. Defendants' reckless failure to conduct adequate investigation prior to publishing their defamatory statements, and failure to cite exculpatory facts, are sufficient to demonstrate actual malice on the part of Defendants. *See Gilmore v. Jones*, 370 F. Supp.3d 630, 680 (W.D. Va. 2019) (finding that the plaintiff's allegation that the

6

defendants never contacted him to verify the veracity of a police officer's account created a plausible inference of actual malice).

Additionally, other badges of malice include repetitive media attacks on the plaintiff, omitting pertinent information in order to create a false impression, and failing to contact key witnesses. *See* Socias, p. 40. In this case, Mr. Reed alleged that Defendants, Chamblee in particular, had engaged in a pattern of defamatory statements against Mr. Reed for years, including setting forth statements by Chamblee in 2019 that Mr. Reed had allegedly "flagrantly broke the rules…," as well as how Mr. Reed's teammates had allegedly "made a deal with the devil…" Dkt.#28-13, 32.

The trial court ignored Mr. Reed's extensive allegations regarding the collaboration between Chamblee, Hack, Bacon, Lynch, Golf Channel and the PGA Tour; Defendants' ill will and history of defamatory statements towards Mr. Reed; Defendants' failure to adequately investigate prior to making defamatory statements and failure to provide exculpatory information in finding that he had failed to plausibly allege actual malice. Dkt.#91-68. "A dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice and the plaintiff should have the opportunity to amend his complaint." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 706 (11th Cir. 2016). Mr. Reed should have been permitted to develop the evidence relating to his claims. As another court has

7

observed, "'the issue of 'actual malice' ... cannot be properly disposed of by a motion to dismiss,' where the plaintiff has had no opportunity to present evidence in support of his allegations." *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (observing that the plaintiff might be able to persuade a jury that the defendants knew their stories were false or recklessly disregarded the truth, finding that it could not hold that that defendants acted without actual malice as a matter of law where the district court dismissed the plaintiff's lawsuit "before she had a chance to depose witnesses, request documents and otherwise pursue evidence necessary to her case through the discovery process") (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 (9th Cir. 2001)). Defendants knew that their statements concerning Mr. Reed and other LIV players were false or recklessly published their statements to defame them. The trial court, in ruling on Defendants' motions to dismiss, should have construed Mr. Reed's Amended Complaint in a manner most favorable to him. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1249 (11th Cir. 2005) (quoting *Miccosukee Tribe of Indians of Fla. v. So. Everglades Restoration Alliance,* 304 F.3d 1076, 1084 (11th Cir. 2002)). It failed to do so, while affording Mr. Reed no opportunity for discovery. The trial court's finding that Mr. Reed failed to allege actual malice, in view of the well-pleaded allegations in his Amended Complaint, was error.

**II. Defendants' Statements Were Not Protected "Pure Opinion" or "Hyperbole"**

Defendants argue next that "none" of the statements raised by Mr. Reed support a cause of action for defamation for the reason that the statements were constitutionally protected "pure opinion" or "rhetorical hyperbole." GC Brf., pp. 20-21. In order to constitute alleged "pure opinion," however, a defendant's opinion must "'based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public.'" *Zimmerman v. Buttigieg*, 576 F. Supp.3d 1082, 1097 (M.D. Fla. 2021) (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)). Moreover, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 457 (Fla. 4th DCA 1990).

Defendants defend Chamblee's statements regarding Mr. Reed and the other LIV golfers, "**[w]ould you have played for Stalin… Hitler…** [etc.]," Dkt.#28-37, on the asserted grounds that the statements were made during a golf podcast, in the context of high-profile controversies between the PGA Tour and LIV, and that the audience was expected to understand that it was listening to opinions. GC Brf., pp. 23-24. The context surrounding Chamblee's statements demonstrates, however, that he was not solely giving opinions, and that the podcast audience heard more than

mere, pure opinion. On the contrary, prior to insinuating that Mr. Reed and the other LIV players were playing for a violent and brutal dictator, Chamblee discussed facts relating to the course and history of the U.S. Open, Dkt.#36-2-3-9; specific golfers moving to LIV, mentioning Mr. Reed by name, *id*. at 10; his own history on the PGA Tour, *id*. at 14; the amounts of money LIV players were being paid, *id*. at 18; and then afterwards proceeded to discuss specific instances of alleged ill will between PGA and LIV players, *id*. at 23-25. Chamblee never stated a single fact upon which he based his so-called opinion that Mr. Reed and the other LIV players were allegedly playing for an alleged murderous dictator, and there is no basis to assume that the alleged political background to his statements was well known to the audience. Chamblee's statements accordingly could not be held to constitute alleged protected "pure opinion," but were statements of fact or, at most, statements of mixed fact and opinion. *See Scott v. Busch*, 907 So. 2d 662, 668 (Fla. 5th DCA 2005) (finding that the defendant's statement that the plaintiff had illegally obtained a building permit was not a "pure opinion" because the defendant "did not disclose the factual basis to support her opinion… [and] the factual basis for [the defendant's] statement was not known to the audience"); *Lipsig v. Ramlawi*, 760 So. 2d 170, 183, 184 (Fla. 3d DCA 2000) (reversing the trial court's grant of summary judgment in favor of the defendants, who made statements that the plaintiff had wrongfully taken

money and was a "thief," where the defendants failed to provide complete or accurate accounts of the underlying facts).

Similarly, Chamblee's posts that "**murders lost**" and that Mr. Reed and the other LIV players were "**doing business in a country and directly for a murderous regime…**" Dkt.#28-26, was not accompanied by any context whatsoever, and set forth no facts establishing that Mr. Reed and the other LIV players were allegedly "murderers"—an inflammatory statement which was malicious and defamatory *per se*—or were doing business with the Saudi government. Dkt.#36-13-1. Chamblee's statements were made following the denial of a temporary restraining order sought by players for LIV against the PGA Tour. Dkt.#28-25. Neither did Lynch's article, in which Lynch commented on the harm to Mr. Reed's and other LIV golfers' reputations "**that comes with taking guaranteed cash to sportswash Saudi atrocities**," Dkt.#38-1-5, contain facts supporting his opinion that Mr. Reed or any LIV players were allegedly taking cash to "sportswash" alleged "atrocities," *id*.

Defendants claim that Chamblee's statements that the LIV players were playing for blood money was a subjective assessment and is not capable of being true or false. GC Brf., p. 27. Where statements "are capable of being proved false, they are not protected." *Fla. Med. Ctr., Inc.*, 568 So. 2d at 458. Furthermore, a statement's truth or falsity is "quintessentially a question of fact that ought not to be determined on a motion to dismiss absent some extraordinary factor…" *Michel*, 816

11

F.3d at 701 (quoting *Kelley v. Hearst Corp.*, 157 N.Y.S.2d 498, 500 (1956)). Contrary to Defendants' assertions, whether Mr. Reed and other LIV players allegedly knowingly do business with, and "sportswash" for, the Saudi government were also capable of being demonstrated to be true or false through development of the evidence. *See Gilmore*, 370 F. Supp.3d at 674 (finding that an article with a heading stating that the plaintiff allegedly attended a rally in order "to orchestrate rioting and spin a misleading media narrative [wa]s 'capable of being proven true or false'") (quoting *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 862 (Va. 2003)); *Fla. Med. Ctr., Inc.*, at 459 ("The… statements… that the hospital performs and charges for unnecessary tests and medications; that it makes major profits by leaving patients in intensive care an extra day whenever possible… are statements which are provable as being true or false, and they are false according to appellant's complaint… Therefore, we cannot conclude on a motion to dismiss that the appellant has failed to state a cause of action for libel…"). Mr. Reed expressly alleged that the statements were false. Defendants' statements were furthermore not simply mere "hyperbole," as found by the trial court and argued by Defendants. GC Brf., pp. 25-26. Rhetorical hyperbole consists of statements which cannot be proven false. *See Akai Custom Guns, LLC v. KKM Precision, Inc.*, No. 20-CV-61469-RS, 2023 WL 8449374, at *13 (S.D. Fla. Dec. 6, 2023); *see also Presley v. Graham*, 936 F. Supp.2d 1316, 1325 (M.D. Ala. 2013) (finding that the court could not say as a matter of law

that the defendant's statement that the plaintiff was allegedly "a supervisor's nightmare" was "rhetorical hyperbole incapable of a demonstration of falsity").

Defendants also claim, misleadingly, that Bacon's and Hack's statements on Golf Channel during the 2021 Farmers Insurance Open reputedly did not hide any facts from the audience, that Bacon and Hack stated that Mr. Reed did not violate any of the relevant rules and was cleared of any wrongdoing, and that the audience was advised of the incidents upon which Defendants' opinions were based. GC Brf., pp. 31, 32, n. 26. As demonstrated by the Defendants' own prepared transcript of the broadcast however, Bacon and Hack never stated that Mr. Reed did not violate any rules—rather Defendants played a clip of a PGA official, who stated his opinion that Mr. Reed did nothing wrong. Dkt.#36-7-9. On the contrary, Bacon stated, without any evidence, how it seemed like Mr. Reed allegedly "grabbed the ball and decided to make a decision on the rule." *Id*. at 14. Hack then said that it seemed that Mr. Reed was allegedly "dictating" the situation. *Id*. At the conclusion of the broadcast, Bacon then admitted that there was "a lot to unpack" in relation to the incident. *Id*. at 17. Hack then falsely stated that there were "so many episodes like this" involving Mr. Reed. *Id*. Bacon and Hack never provided the audience with any additional facts concerning Mr. Reed's college career, or any alleged prior incidents. *Id*. at 1-18. Bacon's and Hack's statements clearly implied that Mr. Reed was cheating and violated the rules. "A charge of cheating… if false and made with knowledge of such

falsity or with reckless disregard for the truth thereof, would certainly be beyond the constitutional privilege established by the *New York Times* [*Co. v. Sullivan*, 376 U.S. 254 (1964)] standard." *Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50, 52 (Fla. 4th DCA 1976) (*per curiam*). As Mr. Reed alleged below, he has never been determined to have cheated in his entire career, and has only had one rules infraction, which cost him two strokes. Dkt.#28-24.

Defendants statements concerning Mr. Reed's reputed history were malicious or made with reckless disregard for the truth, and were defamatory *per se* and actionable by Mr. Reed. The statements were moreover statements of fact, or mixed fact and opinion, capable of being proven false, and were clearly not alleged pure opinion or rhetorical hyperbole. The trial court's conclusion that Defendants' statements constituted alleged pure opinion or mere hyperbole was erroneous, requiring reversal of the court's Order and remand for the case to proceed to the merits.

## III. Mr. Reed Plausibly Alleged that Defendants' Statements Were "Of and Concerning" Him

Defendants argue that their statements regarding LIV and its players neither mention Reed's name, nor "solely and especially" refer to him. GC Brf., p. 28.

> When the group or class defamed is sufficiently small, the words may reasonably be understood to have personal reference and application to any member of it, so that he is defamed as an individual. In this case he can recover for defamation.... It is not possible to set definite limits as

14

> to the size of the group or class, but the cases in which recovery has
> been allowed usually have involved numbers of 25 or fewer.

*Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)

(quoting *Restatement (Second) of Torts*, § 564A cmt. (1977)).

Mr. Reed laid out in his Amended Complaint the fact that he is one of the most well-known and prominent golfers signed to LIV, and that he is a focal point or lightning rod for media criticism of LIV and its members. Dkt.#28-11. Mr. Reed moreover alleged that Defendants' statements concerning Mr. Reed could be reasonably understood by those who know him as being of and concerning Mr. Reed, as well as other golfers signed to LIV. *Id*. at 17. Furthermore, certain of Defendants' statements which appear to reference LIV as a whole may be reasonably understood in context to refer to specific LIV players, including Mr. Reed. For instance, during Chamblee's podcast appearance, Mr. Reed was one of the LIV golfers expressly named, along with Greg Norman, Phil Mickelson, Richard Bland, Andy Ogletree and Pat Perez. Dkt.#36-2-8, 10, 11-12, 13. This group was more than small enough to support a finding that Chamblee's comments were directed at Mr. Reed and a few other players and support an actionable claim for defamation. *Compare Thomas*, 699 So. 2d at 802, 806 (affirming the dismissal of a suit for defamation brought by 436 commercial net fishermen against four television stations for broadcasting an allegedly deceptive and misleading advertisement, finding that the plaintiffs could not state a cause of action which would satisfy the "of and concerning" requirement);

15

*Adams v. WFTV, Inc.*, 691 So. 2d 557, 557 (Fla. 5th DCA 1997) (*per curiam*) (637 fishermen sued three television stations).

Plaintiffs have been found to have plausibly stated claims that defamatory statements were "of and concerning" them sufficient to overcome motions to dismiss in cases including where two members of a 53-member college fraternity brought claims against a magazine for publishing an article regarding an alleged rape by seven members of the fraternity, *see Elias v. Rolling Stone LLC*, 872 F.3d 97, 100, 108, 110 (2d Cir. 2017); and where three principals of a corporation engaged in the construction of residential homes filed suit against various town councilmembers based upon a statement by the town attorney that the company was allegedly responsible for toxic dumping, *see Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp.3d 610, 618-619, 621-622 (E.D.N.Y. 2018).

Members of the public who follow professional golf and who are aware of Mr. Reed and LIV, especially considering the golf media's history of singling Mr. Reed out for criticism and abuse, would be able to reasonably associate attacks on LIV and its players by Chamblee and Lynch with Mr. Reed, as one of a small group of LIV's most prominent players. Mr. Reed is among a small group of LIV's elite players, along with Mickelson, Brooks Koepka, Dustin Johnson, Bryson DeChambeau, Patrick Reed, Cameron Smith, Kevin Na, Charles Schwartzel, Ian Poulter, Lee Westwood, and Sergio Garcia. Dkt.#28-10-1 The high-profile

16

professional golfers signed with LIV represent a group substantially less numerous than the affected group in *Elias*, and far smaller than the class of plaintiffs in *Thomas*. The trial court erroneously dismissed Mr. Reed's claims for defamation without any finding that Defendants' statements were "'incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff.'" *Thomas*, 699 So. 2d at 805 (quoting *Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995)). Mr. Reed alleged that Defendants' statements were "of and concerning" him, as well as LIV and its members. Dkt.#28-11, 15, 17, 18, 21, 25. Mr. Reed should have been permitted to conduct discovery and develop evidence which might support a finding by the trier of fact that Defendants' statements were "of and concerning" him. The trial court's dismissal of Mr. Reed's claims on the alleged ground of failure to allege fact showing that Defendants statements regarding golfers for LIV was erroneous and warrants reversal and remand.

## IV. <u>The Trial Court Erred in Dismissing Mr. Reed's Claims for Tortious Interference</u>

Defendants argue that Mr. Reed's claims for tortious interference fail pursuant to Florida's "single action doctrine." GC Brf., p. 33 (quoting *Bongino v. Daily Beast Co., LLC*, No. 19-cv-14472, 2021 WL 4976287, at *2 (S.D. Fla. Feb. 9, 2021)). Federal Rule of Civil Procedure 8 provides that "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the

17

pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). As a federal court in Florida has observed:

> Federal Rule of Civil Procedure 8(d) allows a plaintiff to plead in the alternative." Fed. R. Civ. P. 8(d)(2). That rule states that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id*. Additionally, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "[S]eparate counts of the complaint must be read separately." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277–78 (11th Cir. 2006). As such, there mere fact that the [plaintiff's] causes of action for defamation by implication and defamation *per se* are mutually exclusive does not subject the defamation per se claim to dismissal.

*Zimmerman*, 576 F. Supp.3d at 1098.

Mr. Reed's tortious interference claims alleged that Defendants knew of valuable sponsorship and business relationships and opportunities between Mr. Reed and various entities, and intentionally and unjustifiably interfered with the relationships and opportunities in order to cause injury to Mr. Reed. Dkt.#28-82-90. Defamation and tortious interference require proof of different facts under Florida law. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (stating that the elements of defamation are "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official… ; (4) actual damages; and (5) statement must be defamatory") (citing *Restatement (Second) of Torts* §§ 558B, 580A–580B (1977)); *Gossard v. Adia Servs., Inc.*, 723 So. 2d 182, 184 (Fla. 1998) (stating that the elements of a tortious

18

interference claim are ""'"(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship'"') (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla.1994); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla.1985)). Mr. Reed accordingly alleged facts distinct from his defamation claims in support of his claims for tortious interference. The trial court should have permitted Mr. Reed to maintain his tortious interference claims pursuant to Rule 8, and the dismissal of the claims amounted to error.

## V. <u>The Trial Court Abused Its Discretion, or Erred, in Finding That Further Amendment Would Be "Futile" and Dismissing Mr. Reed's Claims With Prejudice</u>

Defendants maintain that the trial court's dismissal of his claims with prejudice did not amount to an abuse of discretion.[2] GC Brf., p. 37. Defendants contend that no additional opportunity to amend was requested. *Id*. at 38.

The trial court dismissed all of Mr. Reed's claims in the action below with prejudice, noting that it had provided him with an opportunity to amend but that his

---

[2] While Defendants claim that the trial court's finding that permitting additional amendment of a pleading is reviewed for abuse of discretion, Mr. Reed shows that the Court "review[s] *de novo* a decision that a particular amendment to the complaint would be futile." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999)).

"amendments were sparse and he continued to assert the same alleged defamatory statements, while not curing the deficiencies identified in the Order[ ] dismissing the original complaint[ ]." Dkt.#91-72-73 (citing Dkt.#27). In fact, before any of the Defendants filed an answer or moved to dismiss Mr. Reed's original complaint, the trial judge *sua sponte* took issue with Mr. Reed and his complaint, and issued an order dismissing his complaint with direction to file an amended complaint. Dkt.#27. The court found Mr. Reed's complaint to be an alleged "shotgun pleading" on the ground that it incorporated its factual allegations into each count. *Id*. at 2. The court also found that the complaint failed to comply with Federal Rule of Civil Procedure 8(a)'s requirement that a complaint contain a short and plain statement showing that the plaintiff is entitled to relief. *Id*. at 3. It instructed Mr. Reed to reevaluate his claims, and to bring only those claims which are meritorious and supported by law. *Id*. Mr. Reed proceeded to prepare and file his Amended Complaint, as well as a notice in which he explained to the trial court how he had amended his pleading in good faith, in order to comply with the court's order. Dkt.#28, 29.

In the more than nine months between Mr. Reed's filing of his Amended Complaint and the trial court's dismissal of the Amended Complaint, the trial court never informed Mr. Reed that it viewed him as having failed to cure the alleged deficiencies which it raised in its order. The trial court furthermore failed to inform Mr. Reed, at any point prior to its dismissal of all of his claims with prejudice, that

it continued to have a complaint concerning the statements which Mr. Reed had alleged to be defamatory of him. Mr. Reed did not request an additional opportunity to amend his pleading on the ground that he had no indication that the trial court continued to view his claims as allegedly deficient. GC Brf., p. 38.

The findings of the trial court that Mr. Reed had failed to cure the deficiencies in his original complaint and that permitting a second amendment would be futile amounted to error and an abuse of discretion. Dkt.#91-72-73. Mr. Reed had demonstrated a good faith willingness to amend his pleading to address any alleged deficiencies. Dkt.#27. The intent behind Federal Rule of Civil Procedure 15 "is to assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves." *Summit Off. Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981) (citing *United States v. Hougham*, 364 U.S. 310, 317 (1960); *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 873 (5th Cir. 1976); 3 *Moore's Federal Practice* § 15.02(1) (2d ed. 1976)). Although the court made reference to claims which were meritorious and supported by law in dismissing Mr. Reed's claims on its own initiative, it did not disclose that it viewed any or all of the claims which he had raised as insufficient, or how. In the interests of justice and determination of Mr. Reed's claims on their merits, the court should have afforded Mr. Reed another chance to amend his pleading. *See Miller v. Sawant*, 18 F.4th 328, 332, 335 n. 7 (9th Cir. 2021) (observing

that the court had held that the district court abused its discretion in dismissing the plaintiff police officers' complaint for defamation against a city councilwoman while denying leave to amend, finding that because the plaintiffs "may be able to plead additional facts to show that [the councilwoman's] remarks can reasonably be understood as referring to them, such as who heard the remarks, and whether anyone identified Plaintiffs as the subject of them, we cannot say that amendment would be futile") (quoting *Miller v. Sawant*, 811 F. App'x 408, 410–411 (9th Cir. 2020)).

The trial judge's finding that Mr. Reed's initial complaint allegedly failed to set forth a short, plain statement showing that he was entitled to relief is contrary to its finding in its Order dismissing his suit with prejudice that Mr. Reed had failed to meet the requirements of pleading actual malice or that Defendants' statements were "of and concerning" him. Dkt.#91-2. Mr. Reed believed that the trial judge below was prejudiced against him and his claims based the wholesale disposal of all of Mr. Reed's claims, the *sua sponte* dismissal of his original complaint and staying of any discovery, the Defendants' *ex parte* submission of materials to the court and the judge's membership in an exclusive club which high-level members of the PGA Tour were members of. Dkt.#93-3, 10, 11, 34. Mr. Reed submits that the treatment of his claims and improper conduct on the part of the trial court supports a direction to the court to assign the case to a different judge in the event that the trial court's Order is reversed and the case remanded.

## VI. **The Trial Court's Erroneous Dismissal of Mr. Reed's Claims Has Not Been Waived**

The Golf Channel Defendants and Gannett Defendants contend that challenges to the trial court's rulings have been waived on appeal. GC Brf., pp. 35-36; Gannett Brf., pp. 10-11. Mr. Reed appealed the court's Order dismissing all of his claims against all Defendants. Dkt.#103. He has raised and argued errors by the trial court in determining to dismiss all of his claims with prejudice. Appellant Brf., pp. 1, 18-43. While the parties on appeal are responsible for raising and arguing issues, once an issue or claim is before the Court, it is not limited to the particular legal theories advanced by the parties, but possesses independent power "'to identify and apply the proper construction of governing law.'" *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1035 n. 2 (11th Cir. 2022) (quoting *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991); citing *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1208 & n.9 (11th Cir. 2021)). Parties furthermore cannot waive the application of the correct law or stipulate to an incorrect legal test. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018). Moreover, review of a grant of a motion to dismiss is *de novo*, accepting as true the factual allegations in the complaint and construing them in a light most favorable to the non-movants. *See Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024) (citing *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012)).

23

Mr. Reed has not waived any challenge to the trial court's dismissal of his Amended Complaint with prejudice. The authorities proffered to the Court by Defendants concern either failure to raise, or mere passing reference to, issues on appeal. GC Brf., p. 36 (quoting *MS Life Ins. Co. v. Barfield*, 203 F. App'x 306, 307 (11th Cir. 2006) (*per curiam*) (appellant failed to address the trial court's grant of summary judgment in her initial brief); *Shell v. AT&T Corp.*, No. 20-12533, 2021 WL 3929916, at *9 (11th Cir. Sept. 2, 2021) (*per curiam*) (appellant failed to argue in his initial brief that he had established a *prima facie* case of age discrimination); Gannett Brf., p. 11 (quoting *McSmith v. Unite Here Loc. 23*, No. 21-10078, 2022 WL 1718979, at *2 (11th Cir. May 27, 2022) (finding that the appellant did not fully brief the issue of the district court's grant of summary judgment in favor of the appellee union); *Horace v. MD Now Med. Centers, Inc.*, No. 23-11337, 2024 WL 1091702, at *2 (11th Cir. Mar. 13, 2024), *cert. denied*, No. 23-7255, 2024 WL 2883829 (U.S. June 10, 2024) (concluding that the appellant had forfeited argument which appellant did not raise in the district court). As for the Gannett Defendants' claims of waiver, Mr. Reed expressly alleged in his Amended Complaint that Defendant Gannett owns Golfweek, which published articles by Defendant Lynch which were defamatory of Mr. Reed, and that Defendant Gannett used its agents to defame and disparage Mr. Reed. Gannett Brf., p. 11; Dkt.#28-28, 31. In contrast, the trial court referenced Defendant Gannett only *once* in its Order dismissing the action with prejudice.

Dkt.#91-35. As the Supreme Court has recognized, if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement. *See Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) (citing *Restatement (Second) of Agency*, §§ 249, 262 (1957)). Mr. Reed has not waived any grounds relating to the trial court's dismissal of his claims in relation to the Gannett Defendants.

## CONCLUSION

Appellant Patrick Nathaniel Reed prays that the Court reverse the Order of the trial court and remand the case for further proceedings and assignment to a different judge.

Respectfully submitted, this 27th day of June, 2024.

*/s/ Anthony C. Lake*_____

Anthony C. Lake

State Bar of Georgia No. 431149

Gillen & Lake LLC

400 Galleria Parkway

Suite 1920

Atlanta, Georgia 30339

Telephone: (404) 842-9700

Fax: (404) 842-9750

Email: aclake@gwllawfirm.com

Of Counsel:

Larry Klayman
Florida State Bar No. 246220
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
Telephone: (561) 558-5536
Email: leklayman@gmail.com

*Counsel for Appellant Patrick N. Reed*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,275 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Anthony C. Lake*_____
Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

*Counsel for Appellant Patrick N. Reed*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, pursuant to Fed. R. App. P. 21(a)(2)(A)(ii) and Fed. R. App. P. 25(d), that the foregoing filing was this 27th day of June, 2024, served by the undersigned by depositing the filing with a commercial carrier, for delivery within 3 days to the Clerk of Court and the following persons at the following addresses:

Rachel E. Fugate, Esq.
Minch B. Minchin, Esq.
Deanna K. Shullman, Esq.
Shullman Fugate PLLC
100 S Ashley Drive
Suite 600
Tampa, Florida 33602

Carol J. LoCicero, Esq.
Linda R. Norbut, Esq.
Thomas & LoCicero, PL
601 South Boulevard
Tampa, Florida 33606-2629

Emily Parsons
Jay Ward Brown
Charles David Tobin
Ballard Spahr LLP
1909 K Street, NW
Suite 12th Floor
Washington, DC 20006

*/s/ Anthony C. Lake*_____

Anthony C. Lake
State Bar of Georgia No. 431149
Gillen & Lake LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
Telephone: (404) 842-9700
Fax: (404) 842-9750
Email: aclake@gwllawfirm.com

*Counsel for Appellant Patrick N. Reed*